# FLETCHER G. WELCH

*v.*

# HARRIET M. DUTTON *et al.*

1. CONVEYANCE—*when legal title subsequently acquired passes to grantee.* If a party having the equitable title to land, and being entitled to the legal title, conveys the same by a quit-claim deed, and subsequently acquires the legal title, it will inure to his grantee.

2. SAME—*doctrine of relation back.* Where there are divers acts concurrent to make a conveyance, estate or other thing, the original act will be preferred, and to this the other acts will have relation.

3. The fiction of relation is, that an intermediate *bona fide* alienee of the incipient interest may claim that the patent issued to pass the legal title inures to his benefit by an *ex post facto* operation, and receives the same protection at law that a court of equity could afford him.

4. Where the assignee of a certificate of the purchase of school land, the purchase money being all paid, conveyed the premises by quit-claim deed, and, in a few days after, received a patent from the State, it was *held*, that the legal title thereby passed to his grantee.

5. PATENT—*may be recalled and cancelled before delivery.* If a patent is issued to a purchaser of school land, and sent to the school commissioner, who returns the same, requesting a patent to be made to an assignee, there being no delivery of the first, a second patent to the assignee will be good.

6. DOWER—*released by uniting in deed with the husband.* A wife may unite with her husband in a deed, after its execution by him, and thus release her dower.

7. SALE OF LAND—*furnishing abstract.* Where a contract for the sale of real estate provides that the vendor shall furnish an abstract, and, if it shows a good title, the payments are to be made, etc., if other written evidences furnished in connection with the abstract show a good title, this will be sufficient, although the abstract of itself failed to show title.

8. SAME—*when offer to perform is not necessary.* Where a purchaser of land notifies the vendor, in writing, that he declines to purchase, for certain alleged defects in the title, which do not exist, he can not, in an action to recover back a payment made, recover on the ground that no conveyance has been tendered to him.

APPEAL from the Circuit Court of Cook county; the Hon. LAMBERT TREE, Judge, presiding.

This was an action, commenced by attachment, by Fletcher G. Welch, against Harriet M. Dutton, Lucil E. Wright and Mary D. Willner, to recover back $1000 paid on a contract for the purchase of certain real estate in the city of Chicago.

The written contract provided that one-fourth of the price, including the cash payment of $1000, should be paid on or before April 12, 1872, and that the defendants should "furnish abstract of said property, and if the said abstract shows good title, then the said Welch is to pay the balance of cash payment on date as above written, and, in case he fails to make such payment, the $1000 now paid is to be forfeited as liquidated damages;" and further provided that, on failure to show good title, the $1000 should be returned to Welch.

The other material facts are stated in the opinion of the court.

Mr. F. W. S. BRAWLEY, for the appellant.

Messrs. WILLIAMS & THOMPSON, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The main objection taken to the title exhibited in this case is, that, as Giles Williams conveyed only by quit-claim deed to Parker, Adams and Stearns, under whom appellees claim, on June 15, 1839, and Williams himself subsequently acquired the patent title on June 21, 1839, such grantees obtained no title to the land; that the title secured by the subsequent patent to Giles Williams did not inure to his said grantees in the quit-claim deed.

The land in question was originally school land, and is in the School Section addition to Chicago, being a portion of school section 16, township 39 north, range 14 east, in Cook county.

From the two letters of the Auditor of the State and the former school commissioner of Cook county, which were produced in evidence without objection, it appears that, at the

sale of the school section, this land was purchased by Gurdon Williams; that payment for it had been made in full; that Gurdon Williams assigned his interest in it to Giles Williams. The patent was issued to Giles Williams, assignee of Gurdon Williams.

The land had been purchased from the State, the purchase money paid in full. The equitable title, then, was in the purchaser. There was nothing remaining in the State but the naked legal title, and nothing remained to be done to complete the title but the formal act of delivering the patent. This equitable title had been transferred to Giles Williams, and was in him at the time of the execution of his quit-claim deed to Parker and others. The issuing of the patent to Williams six days afterward, and his receipt of it, was not the acquisition by him of a new title. It was only in consummation of, and in the completion of the title which he had previously by his quit-claim deed conveyed to Parker and others. We are of opinion that the legal title is not now, and was not at the time of furnishing the abstract, in Giles Williams, but that the legal title conveyed to him by the patent related back to the time of the making of his quit-claim deed, and before, and inured to the benefit of his grantees in that deed, so as to pass to them the legal title to the land. It is the doctrine of relation, applied to protect purchasers, that, "where there are divers acts concurrent to make a conveyance, estate or other thing, the original act shall be preferred, and to this the other acts shall have relation." Viner's Abr. Tit. Relation, 290. Cruise on Real Property, vol. 5, pp. 510, 511, thus lays it down: "There is no rule better founded in law, reason and convenience than this, that all the several parts and ceremonies necessary to complete a conveyance shall be taken together as one act, and operate from the substantial part by relation."

The principle was applied in *Jackson* v. *Ramsay*, 3 Cow. 75. where it was held that a deed given by a sheriff, upon a previous sale on execution, relates back to, and, in judgment of

law, is executed at the time of the sale. Also, in *Landes* v. *Brant,* 10 How. 372, where it was held that a patent issued in 1845 "to Claymorgan and his heirs," by which the heirs took the legal title, related back and inured to the protection of a title founded on a sheriff's sale of Claymorgan's equitable interest, made in 1808. The contest was between the grantee's heirs and the purchaser of the incipient title, the court holding that, when the patent issued, it related to the inception of title, and must be taken, as between the parties to the suit, to bear date with the commencement of title. And, in *Lessee of French* v. *Spencer,* 21 How. 228, where it was said: "It is also the settled doctrine of this court that an entry in a United States land office, on which a patent issues (no matter how long after the entry is made), shall relate to the entry, and take date with it (*Ross* v. *Barland,* 1 Peters, 655). The *fiction* of relation is, that an intermediate *bona fide* alienee of the incipient interest may claim that the patent inures to his benefit by an *ex post facto* operation, and receive the same protection at law that a court of equity could afford him." See also, *Crowley* v. *Wallace,* 12 Mo. 145.

It is objected that these letters of the Auditor and school commissioner show that a patent had been previously issued to Gurdon Williams, and that, after that being done, a subsequent patent could not be issued to Giles Williams, and convey any title to him. All there is of that is, the school commissioner, with his letter, returned to the Auditor a patent which had been issued for Gurdon Williams, and informed the Auditor that Giles Williams was the assignee, requesting the patent to issue to him as such. We do not understand from this that the patent was ever delivered to Gurdon Williams, but that it had only gone as far as to the school commissioner's hands. The patent, before delivery to Gurdon Williams, might be recalled and cancelled, and one issued to his assignee.

There appears, by the abstract, a second quit-claim deed from Giles Williams to the same grantees, recorded April 28,

1840. in which Mrs. Williams joins, and it is objected that this shows an outstanding dower interest in Mrs. Williams. How it does, we fail to see. The abstract mentions that this is apparently a re-record of the former deed. We see nothing showing that Giles Williams had a wife at the time of making the first quit-claim deed, and if he had, we do not see why the deed in which she joined would not release any dower interest she might have had.

The abstract, on being furnished, was submitted to counsel for examination, and their written opinion was given, that, on examination of the abstract, they found therefrom that the legal title to the property was then in Giles Williams, from whom it had never passed, and to whom it was conveyed by patent from the State of Illinois, dated June 21, 1839. No other objection was then taken to the abstract, nor do we perceive that any other well founded objection lies to it, and this objection, as already indicated, we do not regard a sufficient one.

Stress is laid upon the particular language used in the agreement, that the sellers "hereby agree to furnish abstract of said property, and if the said abstract shows good title, then the said Welch is to pay the balance of cash payment, on date as above written," and it is insisted that the abstract itself must show good title. Taking the abstract alone, it might not show good title in the appellees, as it does not appear, by the abstract, that the patent was but the completion of the title to the land of which Williams was the equitable owner at the time he made his quit-claim deed; but taking the abstract together with the letters from the Auditor and school commissioner, it shows such fact. These letters were exhibited to appellant, the evidence shows, on the 12th of April, 1872. The letters were evidence of what appeared among the records and files of the Auditor's office. This made written evidence of the state of the title, and that it was good. We think it should be regarded as being sufficiently shown

by the abstract, within the fair intendment of the agreement of the parties.

There was, perhaps, shown, by oral testimony, a sufficient claim of right to the land by the bar of the Statute of Limitation, but we do not dwell on that, as it may be questioned whether that would be such a title as was contemplated, and which appellant would be bound to take.

Objection is made that appellees did not perform, on their part, by tendering a warranty deed for the land, as required by the contract; but the evidence shows that, on the 9th of April, 1872, appellant handed to the appellees the written opinion of his attorneys, before referred to, in regard to the title, accompanied with a notice, in writing, from appellant, that his attorneys advised that he decline to purchase with the defects in the title, and that he thereupon did so decline, and would surrender the contract upon return of the $1000 paid appellees February 12 on account of the same. Here was a positive renunciation of the purchase with the alleged defects in the title, and a dispensation with any further act of performance on the part of appellees.

We find, then, that, without any sufficient excuse, appellant failed to make payment of the balance of the one-fourth cash payment, on or before April 12, 1872, in which event, by the express terms of the contract which appellant made for himself, he was to forfeit the $1000 which he had paid, as liquidated damages. We are of opinion that he has failed to show a right to recover it back, and the judgment must be affirmed.

*Judgment affirmed.*