## Chicago, Burlington and Quincy Railroad Co.

### *v.*

### John C. Chamberlain *et al.*

| | |
|---|---|
| 84 | 333 |
| 123 | 95 |
| 84 | 333 |
| 126 | 51 |
| 126 | 52 |
| 84 | 333 |
| 136 | 331 |
| 84 | 333 |
| 139 | 159 |
| 146 | 325 |
| 84 | 333 |
| 148 | 515 |
| 84 | 333 |
| 164 | 636 |
| 66a | 426 |
| 84 | 333 |
| 177 | 632 |

1. RIGHT OF WAY—*proceedings to condemn, under act of 1852—whether the termini of a railroad are fixed.* By one of the acts under which the Chicago, Burlington and Quincy Railroad Company was incorporated, the line of the road is designated: "From Aurora to some eligible and convenient point in the county of Du Page, there to connect with the Galena and Chicago Union railroad." By an amendatory act, the company was authorized to construct a branch railroad from its main line, from Aurora, in Kane county, to and in the city of Chicago, by the way of Naperville. It was *held*, that, under either of these acts, the *termini* of the road were so far fixed as to authorize the company to proceed to condemn land for its use, under the act of 1852, which is confined, in its operation, to railroads the *termini* of which have been fixed by the legislature.

2. SAME—*of the petition—as to whether the company could procure the right of way by purchase.* In a proceeding by a railway company, under the right of way act of 1852, the petition alleged that the company "has not been able to acquire the title to said several tracts, etc., from the persons interested therein, by voluntary grant or otherwise." This was *held* to be a sufficient averment that the title to the land sought to be condemned could not be acquired by purchase.

3. SAME — *notice of application for appointment of commissioners — whether acted upon.* The notice given in this case was, that application

would be made by the company to the judge of the circuit court, at his chambers, at 10 o'clock A. M. on the 26th day of February, 1864. The petition was filed in the office of the clerk of the circuit court on the 28th of January, 1864. The record of the circuit court showed that, on the 26th day of February, 1864, which was a day of the February term of that court, the petitioner filed in the court the notice, with proof of its publication. On the same day, one of the defendants filed his motion, in writing, to dismiss the proceeding. On the 29th of February, he filed his demurrer. On the 2d of March following, being also of the February term, the motion to dismiss was overruled, and the same defendant filed his answer to the petition; and on the 5th day of March, being of the same February term, the court made the appointment of commissioners under the petition. The record of such appointment recited that due notice had been given of the application. It was *held*, that, apart from the parol proof given of the actual presentation of the petition on the 26th day of February to the court for its action, the record of the proceedings showed the presentation of the petition and the application for the appointment of commissioners were made conformably to the notice.

4. SAME—*of fixing the time and place of the first meeting of the commissioners.* The act of 1852 provides that the court appointing the commissioners shall fix the time and place of their first meeting. But it is not explicitly required that such time and place shall be designated in the order of appointment. So, where the order left the day of meeting in blank, but the *copy* of the order of appointment annexed to the report of the commissioners designated the day of their first meeting, and the report stated that the first meeting was held on the day thus designated, and that the commissioners proceeded "to hear the allegations and testimony of the parties in interest, and, upon request of parties, adjourned from time to time for that purpose," etc., it was *held*, this tended to show there was a day fixed, or at least that the parties attended, and an objection that the time of meeting was not properly appointed, was regarded as not well taken.

5. Moreover, the omission to fix the time would be mere error of the court in its exercise of jurisdiction, and can not be availed of in a collateral proceeding.

6. SAME—*naming the persons to whom compensation is to be paid.* In a proceeding to condemn land which is owned by several persons as tenants in common, and there are adverse conflicting claims, by tax titles, attachment and judgment liens, it is sufficient if the commissioners, under the 6th section of the act of 1852, state in their report "separately the compensation to be paid for each lot of land required," leaving it for the court to determine in regard to the rights of the respective claimants to the money awarded.

7. SAME—*as to notice of the filing of the commissioners' report.* In a collateral proceeding, where the claim of title to land, set up by a railroad company, depended upon the validity and binding effect of certain con-

demnation proceedings had under the act of 1852, it was *held*, that the report of the commissioners in the condemnation proceeding became final and conclusive upon the parties, without it appearing that notice had been given of the filing of the report with the clerk—that it would be presumed such notice was given.

8.  SAME—*acquiescence in the award as waiving the necessity of notice.* Where money awarded in such proceeding has been paid to a party having the apparent title, and another, claiming an interest in the land which has been condemned, exhibits his bill in chancery to set aside the title under which the former claimed, and asserting claim to a portion of the condemnation money thus paid, this will be such an acquiescence in, and ratification of, the award, as will render it conclusive in respect to the interest so claimed in the bill, without regard to the question of giving notice of the filing of the report of the commissioners.

9.  SAME—*to whom the money should be paid.* In a proceeding to condemn land under the eminent domain power, although the bare ownership may be in one person, yet, where a creditor of such person had attached the land and obtained a judgment in the attachment proceeding, a payment of the money awarded in the proceeding to condemn, to such creditor, not exceeding the amount of his judgment, would be a payment to the party interested, in accordance with the statute.

10.  A TERM OF COURT *as one day—in respect to time fixed by notice.* Where notice is given, under the right of way act of 1852, that application will be made, on a designated day, for the appointment of commissioners, and the day thus designated is of a term of court, the petitioner is not restricted to the day named, but may make his application on a subsequent day of the term, the term of court, for such purpose, being, by intendment of law, but one day.

11  JUDICIAL ACTION—*presumption as to its correctness—in respect of special, statutory proceedings.* The strictness with which the proceedings of inferior tribunals are scrutinized, or where a court is exercising a special, statutory jurisdiction, applies only in respect of the question of jurisdiction, and when that is established, the maxim, *omnia rite acta præsumuntur,* applies to them as well as to courts of general jurisdiction.

12.  So, upon an application, under the right of way act of 1852, to the circuit court for the appointment of commissioners, the giving of the proper notice and presentation of the petition will give the court jurisdiction.  Its subsequent action, in the exercise of that jurisdiction, in the appointment of commissioners, will·be presumed to be correct, and that they had the requisite qualifications.

13.  TENANTS IN COMMON—*action of one, in proceeding to condemn land.* Where the ownership of land sought to be condemned for right of way, is claimed by several in undivided interests, the appearance, and testimony

adduced, by one tenant in common, would be for the benefit of all the others interested in the property.

14. Redemption *from sale on execution—what constitutes.* Land was sold under execution, and purchased by a third person. After the lapse of one year from the day of the sale, the purchaser conveyed by quitclaim deed to another, the latter holding the title for the benefit of a railroad company which had instituted proceedings for the condemnation of the land. Subsequently, a sheriff's deed was executed to the purchaser at the execution sale. The report of the commissioners in the condemnation proceedings showed a receipt for the money awarded therein, given by the purchaser at the execution sale while he held the sheriff's certificate of purchase and subsequent to his quitclaim deed for the benefit of the railroad company : *Held,* this payment by the railroad company to the purchaser under execution could not be regarded as a redemption from the execution sale, in the interest of the judgment debtor who had himself no right of redemption remaining, but it was to secure a good title to the land in the railroad company.

15. Judgment *in rem—as evidence of the debt.* Where, in a collateral proceeding, the right to the compensation awarded in a proceeding to condemn land under the eminent domain power, depends upon a judgment *in rem* rendered in a suit by attachment against the former owner, it is not necessary to make proof of the debt on which the judgment was founded. The judgment will be regarded as at least *prima facie* evidence of the indebtedness upon which it professes to have been rendered.

16. Conveyance—*by holder of certificate of purchase under sheriff's sale —inuring of title under sheriff's deed.* It is not necessary, in order to pass the title to land acquired by purchase at a sale on execution, that there should be an assignment of the certificate of purchase and the sheriff's deed made to the assignee,—but the execution purchaser, holding the certificate of purchase, may convey by deed, and the sheriff's deed subsequently executed to him will relate back and inure to the benefit of his previous deed, and make the title complete in his grantee under that deed.

17. Res adjudicata. On an appeal to the circuit court from an award of commissioners in a proceeding under the right of way act of 1852, by one of several defendants therein, there having been no notice to other parties claiming an interest, of the taking of such appeal, or of any proceeding in court to adjudicate upon their interests or upon conflicting interests in the land condemned, and it not appearing that they ever had any notice whatever, or were in any way brought into court, further than the giving of the notice to them of the filing of the petition in the right of way proceeding and of the making of the application for the appointment of the commissioners, there was an adjudication that the condemnation money awarded in respect to certain interests in the land should be paid to the party taking such appeal, as the one entitled thereto : *Held,* that such adjudication, as respects the railroad company in whose interest the con-

demnation money was paid, was conclusive upon any of the parties to the original right of way proceeding who might claim adversely to the party who was thus adjudged to be entitled to the money.

18. ALLEGATIONS AND PROOFS—*must correspond.* Where the scope of a bill for partition is, that there had never been any acquisition of title by a railway company by proceedings to condemn land, it can not be shown that the company lost the title to the property condemned by reason of its abandonment or non-user.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was a suit by John C. Chamberlain and others for the partition of certain real estate. Afterwards, a cross-bill was filed by Alphonse Hurtel and William T. Ayers, as trustees under the will of Charles P. Page, and by Charles B. Chamberlain, Moses Waring and Caroline Goodman, in which the same relief was prayed as in the original bill. Both the original and cross-bills sought to have declared void certain proceedings instituted by the appellant to condemn the property for railroad purposes. The court, on the hearing, found against the company, and hence this appeal.

Mr. HENRY CRAWFORD, for the appellant.

Messrs. AYER & KALES, and Mr. OBADIAH JACKSON, for the appellees.

Mr. CHIEF JUSTICE SHELDON delivered the opinion of the Court:

This was a bill for partition and other relief, filed in the circuit court of Cook county by John C. Chamberlain, one of the appellees, in January, 1870. The lands sought to be divided are blocks 24, 25, 26, and parts of blocks 23 and 29, in the south-west quarter of the north-west quarter of section 19, in township 39 north, range 14 east, in Cook county. The bill alleges, that the whole estate was owned in the following proportions: John C. Chamberlain an undivided one-eighth; Alphonse Hurtel and William T. Ayers, as trustees under the will of Charles

22—84TH ILL..

P. Gage, an undivided one-third; C. B. Chamberlain an undivided one-eighth; the Chicago, Burlington and Quincy Railroad Company an undivided one-fourth; Moses Waring an undivided one-twelfth; and Caroline Goodman an undivided one-twelfth; that the railroad company, one of the defendants, claimed title to the whole property, by means of certain condemnation proceedings; but the bill alleged that these proceedings were void, and insufficient to divest the title of the complainant or of the other parties in interest. Afterwards, a cross-bill was filed by the other defendants than the railroad company, containing the same allegations, in substance, and praying the same relief as in the original bill.

The railroad company answered, relying upon the condemnation proceedings as vesting paramount title, and setting up payment of the condemnation money to different claimants.

On final hearing, the court below found against the validity of the condemnation proceedings. granted a perpetual injunction against any claim of title thereunder, and awarded partition on the basis of, the interests as set forth in the original bill. The railroad company appealed to this court.

The main question is in regard to the condemnation proceedings. Various objections are taken to their sufficiency.

The proceedings were had under the general right of way law of June 22, 1852. It is urged that that law has no application to this company, because the *termini* of its road had not, at the time of the passage of the act, been fixed by the legislature, according to section 19 of the act. That section (Laws of 1852, p. 152,) is as follows: "All corporations heretofore created by special charter of incorporation, or under the general law, where the *termini* have been fixed by the legislature, and none others, may avail themselves of this act." The company was incorporated under and by virtue of an act of the legislature, entitled "An act granting a charter to the 'Aurora Branch Railroad Company,' approved February 12, 1849," and other acts of the legislature supplementary thereto and amendatory thereof.

The language of that act thus designates the line: "From

Aurora to some eligible and convenient point in the county of DuPage, there to connect with the Galena and Chicago Union railroad." Here the legislature had acted upon the subject of fixing the *termini*, and fixed one definitely and the other with as much definiteness as it was thought expedient that it should be fixed by the legislature. Numerous are the instances upon the statute book of the creation of railroad corporations having one of the *termini* of the road fixed by the legislature with the same indefiniteness as in this case, showing such to be a common mode of fixing the *termini* of railroads by the legislature.

By one of the amendatory acts above referred to, approved February 28, 1854, the company was authorized to construct a branch railroad from its main line, from Aurora, in the county of Kane, to and in the city of Chicago, by the way of Naperville, on the line of which last route we understand the land to be situate. We are of opinion that, by virtue of either of these acts of February 12, 1849, or of February 28, 1854, the company, conformably with the 19th section, were entitled to proceed under the act of June 22, 1852.

In the case of *The Peoria and Rock Island Railway Company* v. *Warner*, 61 Ill. 52, the railroad corporation had been created since the passage of the act of 1852, and it was contended that it was not, under the 19th section, entitled to the benefit of that act, because the corporation was not *theretofore* created; but it was held, that the plain reading of the section was, that all corporations with the *termini* fixed by the legislature, should have the benefit of the act, and that the section had no application to that company, because the *termini* of its road were fixed by its charter. Reference, likewise, to the charter of that company, (2 Private Laws, 1867, p. 659,) will show that an extension of the road authorized to be constructed was from Peoria to some point in Tazewell county, to intersect another railroad—the latter terminus being alike indefinite with that in this case, as fixed by the original act of February 12, 1849.

The statute provides for the filing of a petition where the

right or title can not be obtained by purchase, and it is objected that the petition was insufficient to vest any jurisdiction in the court, because it did not allege that the title could not be obtained by purchase—that that was a condition precedent, and its averment a jurisdictional fact. The allegation in the petition in this respect is, that the company " has not been able to acquire the title to said several tracts, etc., from the persons interested therein, by voluntary grant or otherwise." It is certainly inconsistent with this allegation, that the title could have been acquired by purchase. In substance and effect, although not in precise terms, the petition does aver that the title to the land could not be obtained by purchase, and we regard it as substantially sufficient in that respect.

The notice of the intended application, and of the time and place of making the same, it is said, was a prerequisite. No objection whatever is taken to the form and manner of the notice, which is made part of the record. The only point made in this respect is, that the notice was not acted upon. The notice given was, that application would be made by the company to the judge of the circuit court, at his chambers, at 10 o'clock A. M., on the 26th of February, 1864. The objection is, that the record does not show an application on that day, and that the failure to make it upon that day operated as a discontinuance.

The petition was filed in the clerk's office of the circuit court on January 28, 1864. The 26th day of February, 1864, was a day of the February term of the circuit court. The record of the circuit court shows, that on that day the petitioner filed in the court the notice, with proof of its publication; that on that same day, Alfred B. Darling, one of the defendants in the petition, filed in the court his motion, in writing, to dismiss the proceeding; that on the 29th of February, 1864, he filed his demurrer; that on the 2d day of March, 1864, being of the February term, the motion of Darling to dismiss was overruled, and he filed his answer to the petition; and on the 5th day of March, 1864, being of the February term, the court made the appointment of commissioners under the petition.

There was introduced evidence, that on the 26th of February, 1864, the attorney of the railroad company appeared in open court on behalf of the company, and presented the petition, which had previously been filed on January 28, 1864, to the court for its action. The record of the circuit court of the appointment of commissioners to assess damages, made March 5, 1864, recites: "This day *again* comes the petitioner, by its attorney, and it appearing to the court that the said defendants have had due notice of the filing of said petition and of this application, in accordance with the statute in such case made and provided," etc. It would appear, from this recital, that the application was made in conformity with the notice. Such recital would be evidence of such fact, according to numerous decisions of this court. *Reddick* v. *State Bank*, 27 Ill. 145; *Miller* v. *Handy*, 40 id. 448; *Hobson* v *Ewan*, 62 id. 146, and other cases.

The 5th day of March, 1864, the day of the appointment of commissioners by the court, was a day in the same term of the circuit court of Cook county as the 26th of February, 1864—the day named in the notice when the application would be made. By intendment of law, the term is but one day. In *Shoemate* v. *Lockridge*, 53 Ill. 503, it was held, that where an administrator gives notice that he will file a petition on a particular day of the term for an order to sell real estate to pay debts. he is not restricted to the day named, but may file his petition on a subsequent day of the same term; that it is the duty of the person notified to be present at the time specified, and to await the proceedings of the court, or take a rule on the opposite party to proceed, on non-compliance with which he may have the proceeding dismissed.

· Had any one of the persons notified in the present case appeared before the judge on the 26th of February, 1864, in pursuance of the notice, he would have found the petition on file for the action of the court, and one of his co-defendants present interposing a defense to the petition. Waiving the question of the parol proof made of the actual presentation of the petition on the 26th of February to the court for its action, we are

of opinion the record itself of the circuit court shows that the presentation of the petition, and the application for the appointment of commissioners, were made conformably to the notice.

The statute provides, that the commissioners may be appointed in term time by the circuit court, or in vacation by the judge of the court.

The next objection which is taken, is to the order of appointment made by the court, of commissioners to fix compensation and assess damages; and, first, that the record fails to show that the commissioners appointed were disinterested freeholders of Cook county. The statute provides, that the judge shall "select and appoint three disinterested freeholders of the county, commissioners," etc. There is no averment in the bill, and nothing whatever in any way appearing, whether the commissioners appointed were or not of the character and description required by the statute. We think the presumption is to be indulged that the action of the court was correct, and that the commissioners it appointed had the requisite qualifications.

We consider that the circuit court here exercised its powers as a *court*, and that what it did was strictly judicial in its nature. *Embury* v. *Conner*, 3 Comst. 512; *Rich* v. *City of Chicago*, 59 Ill. 286; *G. and C. U. R. R. Co.* v. *Pound*, 22 id. 399.

The principle laid down in the latter case, which was one of a condemnation proceeding by a railroad, we regard as applicable here, and entirely decisive of the present question. It was there said: "The judge before whom that proceeding was held, was exercising a special jurisdiction conferred upon him by statute, and hence it was necessary to show that it was such a case as authorized him to act—that the facts existed, or at least were alleged to exist, which gave him jurisdiction of the subject matter. * * * When such an application was presented as required him to act, then he acquired jurisdiction over the subject. He was then properly set to work. When jurisdiction is once shown to have attached, his authority to act was as complete as is the authority of the circuit court

in any matter of which it has jurisdiction, and the intendments and presumptions in favor of the correctness of the action had, and judgment pronounced, are as strong in the one case as in the other.   *   *   *   It then had a right to adjudge as to all matters within its jurisdiction, and its judgments were conclusive in all collateral proceedings, and the correctness of such judgments could only be examined upon a direct proceeding, before a superior tribunal, for the purpose of reversing them."

This has been the uniform rule of decision in this State in respect to special statutory proceedings, as applied in numerous cases involving the validity of administrators' sales of lands to pay debts, guardians' sales of the lands of wards, sales in enforcement of mechanics' liens, etc.   *Young* v. *Lorain,* 11 Ill. 624; *Fitzgibbon* v. *Lake,* 29 id. 165; *Stow* v. *Kimball,* 28 id. 93; *Mulford* v. *Stalzenback,* 46 id. 303; *Hobson* v. *Ewan,* 62 id. 146; *Pensoneau* v. *Heinrich,* 54 id. 271.

The strictness with which the proceedings of inferior tribunals are scrutinized applies only in respect of the question of jurisdiction, and when that is established, the maxim, *omnia præsumuntur rite acta*, applies to them as well as to courts of general jurisdiction.   *State of Ohio* v. *Hinchman,* 27 Penn. 479.

In the case before us, the notice and the presentation of the petition gave the court jurisdiction.   Its action in the exercise of its jurisdiction in the appointment of commissioners will be presumed to be correct,—that they had the proper qualifications.   See *Hannibal and St. Joseph Railroad Co.* v. *Morton,* 27 Mo. 317.

It is next objected to the order of appointment, that it does not fix the time of the first meeting of the commissioners.

The statute provides that the court shall fix the time and place of their first meeting.   The language of the order, which was made March 5, 1864, is, " that the first meeting of the commissioners be held at the office of Andrew J. Brown, in the city of Chicago, on —— next, at the hour of 10 o'clock A. M.," etc.   The law does not explicitly require that the time and place of the first meeting shall be designated in the order

of appointment. By the sixth section of the act, the commissioners are directed to file a copy of the order of appointment with their report, in writing. The record shows, annexed to their report, a copy of an order of appointment, in which the time was fixed on the 9th day of March, 1864, at 10 o'clock A. M. The report states that the commissioners held their first meeting at the time specified in the copy of the order of appointment, viz: at 10 o'clock A. M. on March 9, 1864, and that they proceeded "to hear the allegations and testimony of the parties in interest, and upon request of parties adjourned from time to time for that purpose," etc.

The record, therefore, tends to show that a time was fixed, or at least that the parties attended. The report recites such attendance. See *Granger* v. *City of Syracuse,* 38 How. Pr. 308.

It may be observed, too, that the ownership claimed by appellees was of undivided interests in the land. Certain of the parties in interest clearly did appear all through. On such a hearing, the appearance and testimony adduced by one tenant in common would be for the benefit of all the others interested in the property. The omission, moreover, to fix the time would be an error of the court in the exercise of jurisdiction; and the same remarks made in reference to the first branch of the objection, to the order of appointment, are applicable to this. We hold the last point of objection not sufficient.

It is next insisted, that the report of the commissioners is void because it does not name the persons to whom the assessed compensation was to be paid.

The sixth section requires that the commissioners shall "make reports in writing, stating separately the compensation to be paid for each lot of land required," etc. The report does separately state the compensation to be paid for each lot of land. The interests in all the lots were undivided ones of several different owners, and there were adverse conflicting claims, by tax titles, attachment and judgment liens. In such case, we think the commissioners properly ascertained and reported, as they did, the compensation to which the owners of each

particular lot were entitled, leaving it for the court to determine in regard to the rights of the respective claimants, to the money awarded. *Mans. and R. R.* v. *Clark*, 23 Mich. 519; *Reed* v. *L. Bridge Co.* 8 Bush, 73; *In re Williams & Anthony St.* 19 Wend. 688; *Spring Valley Water Works* v. *San Francisco*, 22 Cal. 442.

It is finally objected, that the proceedings to condemn are defective and insufficient, for the reason that it does not appear that any notice was ever given of the filing of the report of the commissioners with the clerk of the court.

Section 7 of the act declares, that upon the making and filing of the report with the clerk, any party interested may appeal from the decision of the commissioners to the circuit court; but if no appeal is taken, the decision and assessment, as reported, shall be conclusive upon the parties, and the right and title to the land, in respect to which compensation is allowed, shall vest in the corporation petitioning, upon the payment of the compensation, with the right to enter upon and use and apply the same, etc.

Section 9 provides, that "parties desiring to appeal from decisions and assessments of commissioners shall, within ten days after being notified of the filing of the report with the clerk, execute and file an appeal bond with the clerk," etc.

Section 11 provides, that notices to parties of the filing of reports of commissioners shall be given, as is required in respect to applications for the appointment of commissioners, and notices of appeals shall be given by the service of summons, as in cases of appeals from judgments of justices of the peace: *Provided*, that non-residents of the State, and persons whose names are unknown, may be notified by publishing notice as is required in respect to proceedings in chancery against non-residents.

It is insisted by appellees' counsel, that the report alone, when made and filed, is not final and conclusive, but it is only *if no appeal is taken*, that the award "shall be conclusive upon the parties," and vest title, etc.; that the time given to parties to take an appeal is ten days after being notified of the filing

of the report with the clerk; that the time, then, for taking an appeal here has not yet elapsed, as it does not appear that the owners of the land have been notified of the filing of the report with the clerk; and the time for taking an appeal runs for the space of ten days after the time such notification shall have been given. Wherefore it is said, the proceeding has not been pursued to that stage which renders the award conclusive upon the parties, and vests title. A minority of the court, including the writer of this opinion, concur in this view; but the majority of the court hold otherwise,—that the report of the commissioners has become final and conclusive upon the parties, without it appearing that notice had been given of the filing of the report with the clerk,—that it will be presumed that such notice was given.

It appears that the report of the commissioners was filed with the clerk of the circuit court on the 24th day of March, 1864, and that on the 30th day of April, 1864, two of the defendants to the petition, Alfred B. Darling and Addison Gage, did take an appeal to the circuit court; but as to all the persons now contesting the validity of the proceedings, there was no appeal taken. The subsequent orders of the circuit court on the appeals were, in one case—that of Addison Gage—that the condemnation money for the interest condemned of Charles P. Gage, jointly belonged to Addison Gage and Charles O. Gage, as judgment creditors by attachment of the interest of Charles P. Gage, who had failed to take any appeal, and that it appeared to the court that the railroad company had paid to Addison and Charles O. Gage the sum of $7595.91, for four-twelfths of the condemned premises, and that that was the interest of Charles P. Gage attached; whereupon, by consent of the attorneys, the appeal of Addison and Charles O. Gage was dismissed.

Upon the back of the report of the commissioners there appears indorsed a receipt, by Addison and Charles O. Gage, of the payment of that sum to them by the railroad company. In the case of the other appeal, the order was, that George W. Gage was entitled to be paid the sum of $3700.96 for one-

sixth part of the condemned premises, being the interest therein claimed by him, and the railroad company having paid to him that sum, that the appeal taken by said George W. Gage be dismissed. There appears here some inconsistency, as the appeal purported to have been taken by Alfred B. Darling, the appeal bond being signed by George W. Gage and Charles A. Badger alone—the statute not requiring the signature of the party appealing—and there is nothing showing an appeal by George W. Gage, more than the recital in the order. Upon the back of the report of the commissioners there appears indorsed the receipt, by George W. Gage, from the railroad company, of $3797.96, for one-sixth of the condemnation money for one-sixth interest in the land claimed by him.

The interests of the appellees, then, would seem to stand affected as follows:

As respects the interest of John C. Chamberlain, the award of the commissioners is to be regarded as conclusive.

As to the Charles P. Gage interest, represented by Hurtel & Ayers, trustees, it appears that a judgment in an attachment suit wherein Charles P. Gage's interest had been attached, was obtained against him in his lifetime, on March 11, 1864, by Addison and Charles O. Gage, for $37,997.66; that the railroad company paid on account thereof, to Addison and Charles O. Gage, $7595, July 23, 1864.

The complainants in the second amended cross-bill offer, if such should be found to be the case, to refund said sum, with interest. The court below did so find, and by the decree charges this interest with the payment to the railroad company of that sum, with interest.

The award as to this one-third interest was but $7595.91, greatly less than the claim of $37,997.66 resting upon it by judgment indebtedness. Although the bare ownership might still remain in Charles P. Gage, in the exercise of the eminent domain power, where the law contemplates a complete divestiture of title and liens, the fund would stand in lieu of the land, and the court would seem to have no power on the facts and the claim, except to order one-third of the award to be paid to

the attachment creditors. This payment, then, appears to be one to the parties interested, in accordance with the statute.

The judgment appears unquestioned, and if Charles P. Gage had appeared to the petition, no part of the award could have been paid to him, because the attachment lien was exhaustive of the interest in the property as measured by the award. This interest, then, must be regarded as acquired and paid for under the condemnation proceeding.

As to the interest of Charles B. Chamberlain, who claims by descent as heir of Charles T. Chamberlain, it appears that on the 8th day of June, 1863, Alfred B. Darling, in a suit of attachment wherein the interest of Charles T. Chamberlain in the land was attached, recovered a judgment against the latter for $11,499.99; that such interest was sold, under a special execution issued upon the judgment, to Darling, on July 6, 1863; that on July 6, 1864, Darling executed a quitclaim deed of all his right and interest in the land to J. M. Walker for the railroad company; that on October 18, 1864, a sheriff's deed under the execution sale, was made to Darling. There appears upon the back of the report of the commissioners, a receipt, dated July 23, 1864, by Darling from the railroad company, of $5696.93, as being for three-twelfths interest in the land claimed by Darling.

The decree finds the fact of this payment by the railroad company, and that it went in part redemption of the land from the sale thereof under the judgment, and that the payment enured to the benefit of the owner of the property, and charges the interest in the land which was found to have descended from Charles T. Chamberlain to Charles B. Chamberlain, with the payment of said sum of money, with ten per cent per annum interest thereon from July 23, 1864.

We perceive no ground for such a decree. The land had entirely gone from Charles T. Chamberlain, the judgment debtor, on the failure by him to redeem it from the sale which had been made under execution on the judgment against him. He had one year to redeem from the sale. He failed to do so. His judgment creditors had three months afterward to

redeem. They did not redeem. All interest, then, of Charles T. Chamberlain in the land was entirely gone. At the expiration of the year for the judgment debtor to redeem, Darling, the purchaser under execution, conveyed his interest in the land to James M. Walker, for the railroad company, and the sheriff's deed afterward to Darling, executed October 18, 1864, enured to the benefit of Walker, and made his title complete.

We can not conceive how the payment made by the railroad company can be turned into a redemption of the land by or for Chamberlain. He then had no right himself to redeem. The railroad company did not make the payment for his benefit, and to save for him any interest in the land, but for its own benefit, to acquire for itself a good title to the land, as against Chamberlain, as well as against Darling.

As the judgment was in attachment against the land only, and not *in personam*, it is suggested that there should have been made proof of the debt on which the judgment was founded, and the same was said in respect to the other lien by judgment in attachment in favor of Addison and Charles O. Gage. But we do not recognize the necessity of any such proof. We must regard the judgments as at least *prima facie* evidence of the indebtedness upon which they professed to be rendered. It appears that on the 16th of November, 1865, Darling executed a quitclaim deed of his interest in the land to Charles T. Chamberlain, the judgment debtor. This deed conveyed nothing, because Darling had nothing to convey, having previously conveyed all his interest to Walker, by his deed of July 6, 1864.

It is insisted that the subsequent sheriff's deed to Darling, made October 18, 1864, passed to Darling all of the legal title that could be made at the sheriff's sale, and that Darling's deed to Chamberlain, of November 16, 1865, passed the title back to the latter; that the way for Walker to have obtained Darling's interest under the sheriff's sale of the land, would have been to take an assignment, from Darling, of the sheriff's certificate of purchase given to Darling, and then have procured a sheriff's deed to himself as assignee. This would have been

one mode; but he might also, as he did, take an independent deed from Darling, and thereby obtain all Darling's equitable interest in the land. Upon the subsequent execution to Darling of the sheriff's deed of October 18, 1864. Darling acquired no new interest in the land. The sheriff's deed was but an act in consummation of the previous sheriff's sale of the land under the execution, and the deed related back, and enured to the benefit of the previous deed which had been made by Darling to Walker, and made the title complete in Walker under that deed.     *Welch* v. *Dutton et al.* 79 Ill. 465.     Nothing remained, then, for Darling to convey to Chamberlain, by his deed of November 16, 1865.

We are of opinion, then, that all the interest of Charles T. Chamberlain (the ancestor of Charles B. Chamberlain) in the land, was divested by the judicial sale under the judgment in attachment, and became vested in the railroad company, (the deed to Walker being for its use).

So far as the condemnation proceeding could be considered as affecting any interest remaining in Darling after the execution of his deed to Walker, it would stand unaffected by the question of giving notice of the filing of the report,—the proceeding having been acquiesced in by Darling, the purchaser of the land under execution, and the amount of the award accepted by him.

As respects the interests of Moses Waring and Caroline Goodman, it appears that on the 27th of September, 1867, they filed their bill in chancery, against George W. Gage, to set aside a certain tax deed obtained by him to the undivided two-twelfths of the west half of the north-west quarter of section 19, township 39 north, range 14 east of the 3d principal meridian, and other property, and also to compel him to pay over to the complainants therein the amount of the condemnation money, $3797.96, which he received from the railroad company as being for one-sixth interest in the land claimed by him; that the controversy was afterward adjusted by Gage executing a release, and the bill was dismissed.

The interest in the land claimed by Waring and Goodman

is one-sixth.   The filing of that bill against Gage to recover from him the one-sixth of the condemnation money which he received on account of the one-sixth interest in the land which he claimed under a tax title, would seem to be a distinct act of acquiescence in, and ratification of, the award, by Waring and Goodman.   The only occasion for an appeal is, where the landowner is dissatisfied with the amount of the award, and desires a rehearing, and trial before a court or jury, as to the amount of the compensation.   He may be entirely content with the amount awarded, and not desire any further trial, in which case, the giving of formal notice of the filing of the report, in order to give opportunity to take an appeal, would be idle, and would be unnecessary, and the award would become conclusive upon the parties without the having given such notice.   It is enough, then, that there should have been acquiescence in the award.   We think, as respects Waring and Goodman, there was sufficient evidence of their acquiescence in the award, shown by their filing of this bill against Gage, asserting their claim to recover from him the amount of this condemnation money awarded and paid over to him.   The award, then, as to this interest, having been acquiesced in, would stand conclusive, without regard to the question of giving notice of the filing of the report of the commissioners.

The amount of the award on account of this one-sixth interest, $3700.96, was paid over by the railroad company to George W. Gage, under the following adjudication of the circuit court above referred to:

"Chicago, Burlington and Quincy Railroad Company *v.* Alfred B. Darling *et al.*                      *On Appeal from an Award of Commissioners.*

"And now comes the said George W. Gage, one of the above defendants, by Edward P. Towne and F. H. Kales, his counsel, and it appearing satisfactorily to the court that said George W. Gage is entitled to be paid the sum of $3700.96, for one-sixth part of said condemned premises, being the interest therein claimed by him, therefore, it is ordered that

said company pay him said sum of money instanter," and after recital of the payment of the money, ordering " that the appeal taken by said George W. Gage to this court, in said matter, be dismissed." It does not appear that any of the appellees here had any notice of the taking of that appeal, or of any proceeding in court to adjudicate upon their interests, or upon conflicting interests in the land, or that they ever had any notice whatever, or were in any way brought into court, further than the giving of the notice to them of the filing of the petition, and of the making of the application for the appointment of the commissioners. It is insisted, on the part of the appellant, that this is an adjudication of court, conclusive upon Waring and Goodman, that Gage was entitled to this money. The provision of the 14th section of the act is, that "Appeals shall bring before the court the questions decided or reported by the commissioners in respect to the parties to the appeal," etc., and it is contended, in behalf of Waring and Goodman, that this adjudication is in no way binding upon them—that its only effect was, to determine, as between Gage and the railroad company, the question of the amount of the condemnation money—that to have rendered it binding upon Waring and Goodman, they should have been notified, or in some way brought into court, in regard to the matter of determining upon the ownership of this interest, and who was entitled to receive the money awarded in respect of it.

There exists the same division of opinion among the court upon this question, as in regard to the other question, of giving notice of the filing of the report, the majority of the court holding that this adjudication, as respects the railroad company, is binding and conclusive upon Waring and Goodman, as a judicial determination that George W. Gage was entitled to receive this condemnation money and justified the payment thereof, by the railroad company, to him, and that such payment was a full discharge of the liability of the railroad company in respect thereto, and vested in them this one-sixth interest; and that if, as between Waring and Goodman and Gage, the latter was not entitled to receive the money,

the only recourse of Waring and Goodman is upon Gage to recover the money from him. We do not discover in the record any evidence of the payment to John C. Chamberlain of the condemnation money for his land. Of course, he will not be divested of it, until such payment shall have been made.

The decree will be reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*

Mr. JUSTICE BREESE: I am of opinion the decree should be affirmed, for the reason, no notice of filing the report was given, so that an appeal could be taken, and for the reason, the land sought to be condemned is not appropriated to the purposes set forth in the petition.

Mr. JUSTICE DICKEY: I dissent from the conclusion of the court.

At a subsequent term, a rehearing having been granted in this case, the following additional opinion was filed:

Per CURIAM: A rehearing having been granted in this case, and a re-argument had, the questions involved have received our further consideration. On full consideration of the additional arguments which have been presented, we find no reason to change the conclusion at which we before arrived, and still adhere to our former opinion and decision.

The question of the loss of title by the railroad company to the property condemned, because of its abandonment or non-user by the company, has been pressed upon our attention. This passed without notice in the former opinion, because we did not regard any such issue to be really presented by the pleadings and proofs.

The scope of the bill was, that there had never been any acquisition of title by the railroad company by the condemnation proceedings, and to have them set aside as void *ab initio.* It is true that there is a general averment in the bill that appellees were in the actual possession of the land, and that the

Additional opinion of the Court.

railroad company had never taken possession of or used the land; but all that, and the small amount of corresponding evidence, was regarded but as incidental to and in support of the main claim: that there had never been any title acquired under the condemnation proceedings, because of their invalidity. We still so think, and that there is no such distinct issue as that of whether or not the company has lost title to the land by abandonment or non-user, properly before us, as the case is now presented.

The decree is reversed, and the cause remanded for further proceedings consistent with this and the former opinion.

*Decree reversed.*