## DAVID S. PATTERSON
## v.
## NELSON SWEET, Adm'r.

1. DEED—CONVEYING RIGHT OF FLOWAGE.—A deed of a right to flow land is not a mere license revocable by the grantor. Nothing short of a reconveyance or non-user for twenty years would destroy the effect of the deed, so that the land would revert to the grantor.

2. FORECLOSURE OF MORTGAGE—COVENANT AGAINST INCUMBRANCES.—Where the owner of land granted by deed the right to flow the land, and subsequently conveyed to another the title in fee of such land, receiving back a mortgage to secure the deferred payments, forecloses such mortgage for nonpayment of certain of the notes, his grantee, the defendant in such foreclosure, may have the amount of damages sustained by him by reason of such flowage, applied in reduction of the notes due and subsequently maturing. Such an easement constitutes a breach of the covenant against incumbrances, and is a proper defense to the notes.

ERROR to the Circuit Court of Ogle county; the Hon. W. W. HEATON, Judge, presiding. Opinion filed May 2, 1879.

Messrs. DIXON & BETHEA, for plaintiff in error; that the deed to plaintiff in error having full covenants, the existence of the right to flow the land was a breach of the covenant against incumbrances, cited Hawk v. McCulloch, 20 Ill. 223; Brady v. Surck, 27 Ill. 479; Moore v. Vail, 17 Ill. 185; Baker v. Hunt, 40 Ill. 264; Hubbard v. Norton, 10 Conn. 431; Kellogg v. Ingersoll, 2 Mass. 97; Mitchell v. Hozen, 4 Conn. 494; Pollard v. Dwight, 4 Cranch, 430; Beach v. Miller, 51 Ill. 206; Rawle on Covenants for title, 140.

The easement was never abandoned, and there was no non-user for twenty years: Washburn on Easements, 547.

The measure of damages is the diminished value of the property, and the amount may be retained from the purchase money: Batchelder v. Surgis, 3 Cush. 201; Harlow v. Thomas, 15 Pick. 66; Wilson v. Cochran, 45 Penn. 270; Alton v. Ill. Trans. Co. 12 Ill. 38; 3 Washburn on Real Property, *674.

The remedy was by cross-bill: Hilliard on Injunctions, 305.

The cause having been heard by Judge Heaton, the decree could only have been entered by him. A decree is inchoate until approved and filed for record: Hugh v. Washington, 65 Ill. 245; Hoey v. McFarlane, 4 C. B. 718.

The right by deed to flow the land was an easement: Angell on Watercourses, § 141; Washburn on Easements, 150; 2 Washburn on Real Property, 349; Woolrych on Waters, 153; Stirling Hydraulic Co. v. Williams, 66 Ill. 393; Gebhardt v. Reeves, 75 Ill. 301.

Even if it is a license, it is coupled with an interest, and therefore not revocable : Woodward v. Seeley, 11 Ill. 157; Kamphouse v. Gaffer, 73 Ill. 453.

The owner of the dam had a right to repair and re-build: French v. Braintree Mfg. Co. 23 Pick. 216; Benham v. Miner, 38 Conn. 252; Winham v. McGuire, 51 Ga. 578; Jaqui v. Johnson, 27 N. J. Eq. 526; Angell on Watercourses, § 149.

Waiver of forfeiture of easement may be inferred from the failure to assert it, and permitting the grantee to make valuable

improvements after condition broken: Kenner v. Am. Contr. Co. 9 Bush. 202; Guild v. Richards, 16 Gray, 309.

Possession of the easement is *prima facie* evidence of title: C. & St. L. R. R. Co. v. Woolsey, 85 Ill. 370; Browne on Statute of Frauds, 236.

A party having an absolute contract of sale of land, is the equitable owner, and may incumber it: Lombard v. Sinai Cong. 64 Ill. 477.

When a party having the equitable title conveys by quit-claim deed, and subsequently acquires the legal title, it will inure to his grantee: Welch v. Dutton, 79 Ill. 465; Morgan v. Clayton, 61 Ill. 35.

Mr. E. F. BULL and Mr. M. D. SWIFT, for defendant in error; that the easement created was only a license, cited Woodward v. Seeley, 11 Ill. 157; Kamphouse v. Gaffner, 73 Ill. 453; Huck v. Flentye, 80 Ill. 258.

A simple grant or release does not pass after acquired title: Frink v. Darst, 14 Ill. 304; Phelps v. Kellogg, 15 Ill. 131.

LELAND, J. The facts in this case chronologically stated, are as follows, as to the title to the land:

On and before September 25, 1860, The Illinois Central Railroad Co. owned the land in relation to which the controversy arises, viz: the northeast quarter of section 36, T. 23, R. 7, etc. On the 25th a contract of sale was made by the company to Garner Sweet, who was to have a conveyance upon making certain payments. On the 26th day of September, 1860, Garner Sweet executed a conveyance to Joel Sanford, by which he remised, released and quit-claimed his interest in and to a part of the W. ½ of the N. E. ¼ of section 36, town 23, range 7; that is to say, so much of said west-half as lies on Buffalo creek, at the upper or north end of Joel Sanford's mill-dam, situated on the N. E. ¼ of section 1, town 23, range 7, and so much of said west half as may be necessary for said Sanford to flow back the water of said dam, when said dam is raised fifteen feet at the bulk-head. It is fully understood that this quit-claim deed extends no further than the use of said land

for the said purpose of flowing the water of said dam, as above described; and further, if at any time the said dam is removed, or shall cease to be used as a dam, then and in that case the said land reverts to the party of the first part, their heirs, assigns, executors or administrators, to have and to hold, etc. in usual form.

The Railroad Co. made a deed to Sweet December 5, 1867. On May 1st, 1869, Garner Sweet, for a consideration of $7,425, conveyed by full covenant warranty deed the above quarter section, and a parcel of land on section twenty-four, described by metes and bounds, to plaintiff in error, Patterson, who paid $3,000 down, and gave notes and mortgage on the same land for $4,425. There was a mistake in description as to the range, which was afterwards corrected.

There were nine notes secured by the mortgage, and there was a bill filed by the administrator of Sweet, to foreclose and sell for a note due May 1st, 1875, for $500, with interest at ten per cent., upon which two years' interest only had been paid. The notes maturing before this one had been sold and transferred, and there had been a foreclosure and sale of some portion of the mortgaged premises. The notes maturing after this one still belonged to the estate of the deceased. There was a cross-bill by Patterson. The defense to the note in suit was the breach of the covenant against incumbrances, in the deed from deceased to Patterson, because of the deed of September 26th, 1860, from the deceased to Joel Sanford, of the right of flowage; and in the cross-bill it was claimed that the amount of the damages sustained by Patterson, if more than the amount due on the $500 note, should be applied to subsequently maturing ones, and that they should be canceled, and surrendered, etc.; and it was also claimed that the damages were more than the amount of all the notes belonging to the estate.

Although it was proved beyond dispute that the land was flowed and damaged to considerable extent, there was no deduction made by the court below, but there was a decree for the amount of principal and interest due on the note, and for a sale of the land.

The case was tried before the late Judge Heaton, who died without having rendered a decree. The decree was by Judge Bailey, and it is insisted, that as he did not hear the evidence, he could not render a decree.

As the question thus presented is not material, we do not deem it necessary to investigate it. We think the decree erroneous upon the evidence in the record, and that there should be a reversal for that reason.

As the case seems to us to be one where it is plain there should have been some allowance to Patterson for his damages by reason of the alleged breach of covenant, the case must be remanded to have the amount ascertained. Appellee's counsel claim that the quit-claim deed from Sweet to Sanford was a mere revocable license, and in support of the position cite Woodward v. Seely, 11 Ill. 157, and Kamphouse et al. v. Gaffner, 73 Ill. 453. These cases do not decide that a deed of a right to flow land is revocable by the grantor, but are to the contrary effect. They decide merely that if there were no deed, but merely a parol grant of such a right, it might be invalid under the Statute of Frauds. That such an easement can be conveyed by deed, is settled law, requiring no authority to be cited in support of it. Angell on Watercourses, Chap. V., 6th edition.

There is no force in the position that the dam has been removed, or has ceased to be used as such. The dam went out partially as dams often do, and it was rebuilt again as is not uncommon; but there has been no such removal of the dam, or ceasing to use it, as amounted under the deed of the easement to an abandonment of it, so that it would revert to the grantor. Nothing short of a reconveyance or non-user for twenty years would have this effect.

We think the construction that the right to flow was only by that particular dam, and that no right to repair if injured, or to rebuild if carried out by the next spring freshet, existed in the grantee under the deed, is incorrect and not reasonable. We look upon it, though rather rudely expressed, as an ordinary conveyance of a right of flowage by a dam fifteen feet high at the bulk-head, commonly called a dam with a head and fall

of fifteen feet, to continue perpetually unless there was that kind of an abandonment mentioned above, or some distinct indication that the grantee had permanently given up the right to the easement. The case of Huck v. Flentye, 80 Ill. 259, about the party wall, is not in point according to our construc- of the deed in this case. On the subject of the right to repair and rebuild, etc., see French v. Braintree Manufacturing Co. 23 Pick. 216; Windham v. McGuire, 51 Georgia, 578, and cases cited; Benham v. Miner, 38 Conn. 252. As to abandonment by non-user, see Angell on Water Courses, 6 Ed. Sec. 252, and notes. See, also, sections 149 and 248. Jaqui v. Johnson, 27 N. J. Eq. 526; Washburn on Easements, etc., p. 447 to 557.

The easement in Sanford and his grantees constituted a breach of the covenant against incumbrances, and if so it was a proper defense as to this note, and if the damages exceeded the amount of it, relief by cross-bill as to the subsequently maturing notes was proper. Morgan v. Smith, 11 Ill. 194; Beach v. Miller, 51 Ill. 206; Jenny v. Heminway, 53 Ill. 97; 3 Wash. Real. Prop. 674, marg. p. 3d Ed.; Bachelder v. Sturgis, 3 Cush. 201; Harlow v. Thomas, 15 Pick. 66; Rawle on Covenants, etc., 140 and 344.

The answer to the point made that Garner Sweet had no title when he conveyed the easement to Sanford, and that such con- veyance was not sufficient to pass a title subsequently acquired, is that by the contract with the railroad company he had an equitable one, and that when one has such title and makes a quit-claim deed, the subsequently acquired title conveyed under the contract does inure to the benefit of the grantee in the quit-claim deed. Welch v. Dutton, 79 Ill. 465.

Such equitable owner may encumber the land in equity as though he had the legal title. Lombard v. The Chicago Sinai Congregation, 64 Ill. 477.

It is unnecessary to say more. There should have been an allowance to plaintiff in error, to be deducted from the note in suit, and if large enough, from those not sued also, of such damages as would be recovered in an action of covenant for the breach of the covenant against incumbrances not capable of being removed. We have been much aided by the thorough

examination counsel have given this case. We desire, however, to say to counsel for plaintiff in error, and to attorneys generally, that care in correcting the proof-sheets of of their printed briefs is of much importance. There are many typographical errors in the otherwise excellent brief of plaintiff in error as to the figures indicating volume and page, and some references we did not find at all. Among the liberal supply of authorities furnished in this case, however, we found all that were necessary to satisfy us that the decree ought to be reversed and the cause remanded.

Reversed and remanded.