THE UNION MUTUAL LIFE INSURANCE COMPANY *et al.*

*v.*

WILLIAM J. SLEE.

*Filed at Ottawa June 17, 1887.*

| | |
|---|---|
| 123 | 57 |
| 127 | 325 |
| 123 | 57 |
| 33a | 418 |
| 123 | 57 |
| 133 | 204 |
| 123 | 57 |
| 136 | 331 |
| 123 | 57 |
| 146 | 322 |
| 41a | 399 |
| 123 | 57 |
| 157 | 629 |
| 123 | 57 |
| 164 | 636 |
| 123 | 57 |
| 72a | 388 |
| 123 | 57 |
| 83a | 410 |
| 123 | 57 |
| 185 | 536 |
| 123 | 57 |
| 103a[11] | 224 |
| 123 | 57 |
| 207 | [1]220 |
| 123 | 57 |
| 113a[14] | 60 |

1. PURCHASER—*with notice that a third person claims certain rights.* A purchaser of land from the holder of the legal title and apparent owner, with notice that another person claims to be the beneficial owner and to have the right to redeem the same, as from a mortgage, will take subject to all the equitable rights of such claimant, as they may be made to appear.

2. ESTOPPEL—*equitable estoppel—as to action induced by the statements or conduct of another.* In order to give rise to an equitable estoppel from the act or statement of a party, it must appear that such act or statement induced action on the part of another which he otherwise would not have taken, and that the latter will be injured by a repudiation of the act done or statement made. If, however, the one who has done the act or made the statement shall repudiate the same, before the other has acted upon it, and the latter does not rely upon it, there can be no estoppel.

3. SAME—*effect of omitting to make one a party to a suit, as a ratification of his claim as a purchaser.* The fact that a party filing a bill to redeem from a deed as a mortgage, fails to make a purchaser from the mortgagee a defendant to his original bill, when he has always denied the mortgagee's authority to convey, can not be held as a ratification of such sale and conveyance so as to preclude him from afterward, by amended bill, asserting his title as against such purchaser.

4. SAME—*to deny legality of condemnation by accepting the compensation.* Where the verdict and judgment in a condemnation proceeding are defective, and insufficient as to all and every part of the property sought to be taken, so as not to vest any right in the petitioner in any part of the land, if the land owner should seek to recover the condemnation money he would be bound to consent that the petitioner should take the entire property. In such case he could not take the money and retain the property. Acceptance of the money would estop him from denying the validity of the condemnation.

5. SAME—*effect of payment of amount awarded.* If the petitioner in a condemnation proceeding, with knowledge that the judgment embraces only a part of the land sought to be condemned, pays over the amount of the judgment to the county treasurer, this will estop such petitioner from claiming that the money deposited was for other property than that described in the verdict and judgment.

6. But where, in a proceeding to condemn an entire property, the description of a part was omitted in the verdict and judgment, and the judgment is in due form, and valid as to the remaining part, and the record fails to show that the compensation allowed was for any other land than that described in the judgment, and the party who sought the condemnation pays the compensation awarded, to the county treasurer, the land owner, by accepting the same, will not admit that the part omitted in the judgment is also condemned.

7. EMINENT DOMAIN—*proceeding to condemn, is at law, not in equity.* A proceeding to condemn lands for public use is a legal one, and not equitable, and is governed by the rules and practice of courts of law. Therefore, a court of equity will not proceed to condemn land omitted by mistake from the judgment, but will remit the parties to a legal forum.

8. SAME—*sufficiency of judgment—burden upon the petitioner.* A proceeding to condemn land for public use being adverse to the owner, he is not presumed as consenting to anything, and the burden rests upon the party seeking to divest his title, of showing a verdict and judgment having that effect; and such party is also responsible for any mistakes occurring in the proceeding.

9. SAME—*right to abandon.* If a railway company seeking condemnation of real estate for its use, considers the compensation assessed, as too high, it may decline to pay or deposit the sum so assessed, and abandon the proceeding.

10. PARTIES—*bill to redeem from mortgage—grantee of mortgagee.* An insurance company holding a deed absolute in form as a security for money due it, conveyed the property and transferred the debt to a railroad company, after which the mortgagor filed his bill to have the deed declared a mortgage and to redeem therefrom: *Held,* that the railroad company was an indispensable party to the accounting before the master.

11. CHANCERY—*hearing before the master—rights of the parties.* On a hearing before a master in chancery, the parties have the same right to be heard, by themselves or by counsel, to introduce evidence, cross-examine witnesses, and to take the various steps authorized by law, as if the hearing was before the court.

12. SAME—*notice of hearing.* A party is entitled to notice of the examination of witnesses before the master in chancery, so that he may be present and hear their testimony as detailed in chief. It is not enough that he is afforded an opportunity, after the examination of witnesses in his absence, to cross-examine them.

13. MORTGAGE—*mortgagor and mortgagee, or vendor and purchaser.* Where it is agreed between a debtor and a creditor that the latter shall bid in certain real estate of the debtor at a sale under a trust deed, to be held by the purchaser as a security for his debt, until a conveyance can be made

to the debtor and a new mortgage given by him, this will create the relation of mortgagor and mortgagee, and not that of vendor and purchaser.

14. SAME—*mortgage as an incident to the debt.* Where a debt secured by mortgage is evidenced by an instrument separate and distinct from the mortgage, the rule in this State is, that the assignment of the debt carries the mortgage with it, and the mortgage can have no validity separate and apart from the debt, nor otherwise than as an incident to the debt.

15. SAME—*conveyance by mortgagee—rights of grantee.* So where the holder of the legal title to land, as a security for the payment of a debt, made a conveyance of the land to one having notice of the debtor's equitable rights, and the grantor entered into a contract with his grantee that in case of a redemption by the mortgagor the grantee should receive out of the redemption money the sum paid by him, with interest, it was *held,* that this amounted to a transfer of so much of the mortgage debt as was secured by the deed, and therefore the mortgagee's deed was good, in equity.

16. SAME—*redemption—condemnation for public use—purchaser from mortgagee—application of credits.* A creditor bid off certain real estate of his debtor at a sale under a trust deed, under an agreement to hold the title as a security for whatever sum might be found due on settlement. Afterward the creditor so purchasing, wrongfully sold and conveyed the property to one having notice of the debtor's rights. A part of the same property was condemned for public use, and the compensation therefor deposited with the county treasurer. It was *held,* on bill to redeem, that the account of the purchasing creditor should be credited with the sum realized from the sale, but not with the condemnation money, so long as his right to receive the same was disputed, but should be charged with the condemnation money from the time when the debtor amended his bill consenting to its application on the debt.

Appeal from the Circuit Court of Cook county; the Hon. Oliver A. Harker, Judge, presiding.

On the 13th of October, 1880, William J. Slee filed his bill in chancery in the circuit court of Cook county, against the Union Mutual Life Insurance Company, alleging that on the 4th of June, 1870, being indebted to the Union Mutual Life Insurance Company, by his promissory note of that date, for $4500, borrowed money, with interest thereon at the rate of eight per cent per annum, payable semi-annually, he secured the same by his deed of trust of lot 1, block 9, in assessor's second division, etc., and 30 by 60 feet of lots 11 and 12,

in Wilder's north addition, being a piece 60 feet on Third avenue, about 111 feet deep, together with other property, all in the city of Chicago; that from the date of the deed until the 16th of June, 1876, he had paid to the agent of the company $2655, which ought to have been applied to the payment of the principal and interest on said loan, but that $540 of said sum which was paid by him in excess of the interest due on said loan was not applied as it should have been; that the complainant, on the 16th of June, 1876, being also further indebted to the Union Mutual Life Insurance Company, by his other promissory note of that date, for the sum of $1600, with interest thereon at the rate of eight per cent per annum, secured the same by his second deed of trust conveying certain lots in Dobbins' subdivision of Chicago, to Levi D. Boone, in trust, etc. It is further alleged that on the Third avenue property there were a double and a single house, which complainant had rented as tenement houses; that complainant became financially embarrassed, and was unable to pay the taxes, interest and insurance, and therefore, in April, 1877, turned over to the insurance company the said tenement houses, and instructed the tenants therein to pay rent thereafter to said company; that said company has had the full control of said property for upwards of three years, and has all that time been negligent in the care thereof; that said company, on January 23, 1879, advertised for sale said lot 1, and the 30 by 60 feet of lots 11 and 12, aforesaid, being a piece of ground 60 feet front on Third avenue, by about 111 feet, with the other property covered by the first trust deed, claiming that nothing had been paid on the first note; that after advertisement, complainant demanded an accounting, and that said sale should not be made until it was had, and an accounting was promised, and an agreement made whereby said property was to be sold, and bought in by said company, and held in trust for complainant until an accounting could be had, and a consolidated loan made for the amount then owing said company; that said

property was sold and bid in by said company; that a statement of account was repeatedly promised, and complainant relying thereon, permitted the title to be held in trust for him until a new loan could be made, but in violation of the agreement the insurance company, on July 22, 1879, entered up judgment by confession against him in the Superior Court for a pretended deficit, after deducting the aggregate amount bid by its agents at the sale, and issued execution thereon, and the sheriff sold the north $6\frac{8}{10}$ feet of lot 2, in block 9, in the assessor's second division, on October 13, 1879, to Robert B. Kendall, for $250, and issued to him a certificate of purchase; alleges that judgment was not for any *bona fide* debt, and he owed no deficit whatever, and ought not, in equity, to be held or bound by said judgment; that on or about January 20, 1880, the Chicago and Western Indiana Railroad Company filed a petition in the county court to condemn said lot 1, and made the insurance company, the city of Chicago, the county of Cook and complainant, parties defendant; that on April 28, 1880, a verdict was rendered in the condemnation proceeding, fixing the value of property described in the petition at $6615, which was $3000 less than its actual value; that it is the duty of said railroad company to pay said sum of money into the county treasury, but that complainant does not know whether or not the money has yet been paid in according to law, but he alleges that the officers of said Union Mutual Life Insurance Company claim and insist that such moneys, when paid in, shall be paid to them, for and on behalf of said company, and not to complainant, and complainant alleges that whatever moneys shall be or have been paid into the hands of the county treasurer under said condemnation proceedings should be paid to him rather than to said company. The prayer is, that the said Union Mutual Life Insurance Company of Maine may be made defendant, and be required to answer the bill and come to an accounting of and concerning the rents and profits of said property, and may be answerable for loss or

damage by reason of their neglect in the management of said property, and that the said company may be enjoined and restrained from collecting of or receiving from the treasurer of the county of Cook any money or moneys now in his hands, or which may hereafter come into his hands, from the Chicago and Western Indiana Railroad Company, under the condemnation proceedings mentioned herein. And finally, for the ordinary summons and for the writ of injunction to carry out the prayers and relief sought by the bill, and for such other and further relief as may be equitable, etc.

The answer of the Union Mutual Life Insurance Company admits the execution of the papers; that there were upon the premises last mentioned in the bill, certain cottages, but alleges that the same were cheaply constructed and out of repair, and that those on the Third avenue property were in the worst portions of the city, scarcely habitable, and that it was unable to collect even the lowest amount of rents; alleges that Slee was in default in the payment of principal, interest and taxes, and was unable to meet his obligations to the defendant; denies each and every allegation of carelessness, negligence and inattention in the collection of rents; charges that Slee had remained in default in the payment of principal, interest and' taxes upon said loans, and that the defendant was obliged to pay all the taxes and all the insurance upon said premises; denies agreement to hold property in trust, and then proceeds thus: "This defendant, further answering, admits that some time in the month of January, A. D. 1880, the Chicago and Western Indiana Railroad Company filed its petition in the county court of said county to condemn, for railroad purposes, lot one (1), in block nine (9), as stated in said bill. But this defendant says, that pending said proceedings, and prior to the filing of said bill in this cause, it sold and conveyed said premises to one A. J. Averill, and that it has no interest in or claim upon any moneys which may have been paid or may be due upon the judgment rendered for the value of said premises,

and that it has never received a single dollar as the result of said condemnation proceeding, or does it now claim any sum to be due it."

The cause came on for hearing on the 13th of July, 1883, and the court, thereupon, among other things, found and decreed that the trustee's deeds to the defendant are, in equity, mortgages, and that the complainant, by reason of the premises, has a right to redeem under the said two original trust deeds, and the deeds of the trustee to the defendant, computing the interest as provided for in said trust deeds, until they were merged in the deeds of the trustee to the defendant, and, from that time, at a legal rate of interest. And, also, further, that Slee's declarations of title were called to the attention of Averill and the Chicago and Western Indiana Railroad Company, "who acquired some rights to portions of the property in controversy. Whatever such rights are the court does not find, but gives complainant leave to make these parties defendant to the bill upon an accounting before the master, so that the rights of said parties may be adjudicated and an accounting had between them and the complainant, under the further directions of the court." And the cause was referred to the master to state an account, under the directions given, and to report, etc. From that decree the Union Mutual Life Insurance Company appealed to this court, and the cause was heard at its May term, 1884, and judgment was then rendered reversing the decree of the circuit court, and remanding the cause for further proceedings in conformity with the opinion then filed.

After the cause was remanded, and on the 8th of July, 1886, certain amendments to the bill were allowed to be filed as *nunc pro tunc* of the 13th of July, 1883, in substance as follows: That the Chicago and Western Indiana Railroad Company is a corporation, etc., and complainant makes it and Albert J. Averill parties to the original and amended bills, and each of them had full knowledge of every allegation of the original bill

when they performed the acts mentioned in these amendments; that at the time of foreclosing the two trust deeds the foreclosures were made under an agreement between complainant and said insurance company that the property should be sold for his entire indebtedness to the insurance company, with the right to redeem, which was well known to the defendants herein; that the amount bid at the trustee's sales represented the entire indebtedness then due to the insurance company; that upon the $1600 note, dated June 16, 1874, there was nothing due on March 24, 1879; that the defendant railroad company desired to obtain for railroad purposes the title to lot 1, and the north $6\frac{2}{3}$ feet of lot 2, in block 9, in assessor's second division, etc., and made an agreement with the insurance company to purchase its interest in the property described in the trust deed, mentioned in the original bill, subject to the rights of the complainant, and a fraudulent agreement to cause a judgment to be entered upon the $1600 note, which was a judgment note, after payment in full satisfaction of said note, and under such judgment to fraudulently acquire the title to said $6\frac{2}{3}$ feet, both parties knowing that complainant was financially embarrassed and unable to protect himself and his property; that there was a secret arrangement to institute condemnation proceedings, enter up fraudulent judgments and make conveyances to third parties, and take various steps unknown to complainant to cloud his title, and to prevent his right to redeem from said trustee's sale, so that, by means of fraud, the said railroad company could acquire the right and title to all lands mentioned in this amended bill; alleges that in violation of his rights, and upon the $1600 note, said insurance company claiming fraudulently that there was something due upon it, entered, by confession, a judgment in the Superior Court of Cook county, on July 22, 1879, for $229 and costs, and on the same day execution was issued on said judgment, and levied, on the 24th day of July, 1879, on the north $6\frac{8}{10}$ feet of lot 2, in block 9, aforesaid, and

that on October 14, 1879, after due advertisement, the same was sold for $252.61, to the said insurance company, and that the sheriff, after deducting his fees, paid the balance, $239.43, to said company; that the sheriff, upon said sale, issued to said insurance company a certificate of sale, duly recorded on October 18, 1879; that soon after its issuance the said insurance company assigned said certificate to Albert J. Averill, who was acting as agent of said railroad company; that on January 14, 1881, in pursuance of this fraudulent agreement, the sheriff issued a sheriff's deed to said Averill, as agent of said railroad company, which deed was duly recorded; that Averill executed a deed of the land mentioned in said certificate, in pursuance of the fraudulent agreement aforesaid, to said railroad company; that the judgment, certificate of sale and sheriff's deed are void, because the parties thereto had full knowledge of facts alleged, and complainant is willing to do such equity as may be required in order to have the same set aside, and offers to said railroad company, or said Averill, all moneys paid by said railroad company to said insurance company in procuring such deed; that in pursuance of said fraudulent combination, the railroad company, on January 20, 1880, filed in the county court of Cook county, Illinois, its petition for the condemnation of lot 1, in said block 9, and therein stated that said insurance company was the owner thereof, though both parties well knew complainant's rights in the premises; that on March 27, 1880, the condemnation petition was amended, and complainant became a party, and said insurance company, because of said fraudulent combination, neglected to appear or defend said suit; that on June 26, 1880, judgment was rendered in the condemnation proceedings, complainant alone having defended, for $6615, and for the land above described, as mentioned in said condemnation suit, and thereafter, on December 27, 1880, in pursuance of some agreement, unknown to complainant, between the insurance company and railroad company, which agreement is essential

to a proper adjustment of the accounts between said insurance company and himself under said decree of redemption, the railroad company paid to the county treasurer, under said condemnation judgment, $6615. The prayer is, that it may be decreed that the title to any land mentioned in this amendment or in the original bill, which may have been conveyed by said insurance company to Averill, and by him to said railroad company, or by said insurance company to said railroad company directly, was conveyed with notice of, and subject to, all the rights and equities of complainant, as stated in such bills, and that any moneys which said Averill or said railroad company may have paid to said insurance company may be credited upon any indebtedness found due from complainant to said insurance company at the date of such payments; also, that in case said insurance company, directly or through Averill, conveyed any other lands than are mentioned in the amended bill, to the railroad company, the court will decree that such lands belong to complainant in fee, subject to the redemption provided for in the decree heretofore entered; that the said judgment rendered in the Superior Court, and the certificate of sale thereon, the sheriff's deed, and all the proceedings concerning the same, may be set aside and declared null and void, upon the grounds of fraud alleged, and that the title to the land mentioned in said sheriff's deed may be decreed to be in complainant, free from any lien or incumbrance, upon payment to said railroad company of the moneys paid by it to the sheriff, and which he paid to said insurance company, after deducting any reasonable costs and charges in that behalf.

On the 21st of March, 1885, by leave of the court, an additional amendment of the bill was filed, wherein it is alleged that a written agreement was made between Averill and the insurance company on the 24th of March, 1880, reciting the sale and execution of the deed by the insurance company to Averill; that complainant had placed on record a notice, to the effect that he claims the right to redeem the property, and

providing that if complainant shall redeem, Averill shall be entitled to retain out of the redemption money $4680 (the price paid by him for the property,) with interest, and also any money complainant may be decreed to pay on account of taxes, assessments, etc.

The Western Indiana Railroad Company filed an answer to the bill, as thus amended, on the 23d of March, 1885, generally putting in issue the material allegations of the bill, denying all knowledge of any agreement under which the insurance company took possession of the property, and denying that an agreement was entered into by the insurance company to hold said property in trust for complainant. It admits the entry of judgment by confession, etc., the levy of execution on the $6\frac{8}{10}$ feet of lot 2, in block 9, as alleged, and alleges the assignment of the certificate of purchase to Averill; that Averill obtained a sheriff's deed pursuant thereto, and has conveyed property to the respondent; admits that about January 29, 1880, it filed its petition in the county court of Cook county to condemn, for railroad purposes, lot 1, block 9, aforesaid, making said insurance company, the city of Chicago and the county of Cook, defendants, and alleging that said insurance company was the owner thereof, but denies that said petition was filed in pursuance of any combination or agreement with said insurance company; denies that it then had any knowledge of the alleged interest of complainant, or that it had then ever heard complainant had any interest or right in any of said property; avers that when it filed said petition it had not investigated carefully the title to said property, and that it intended and supposed that it had described said entire tract of land, 60 by 111 feet, and that it desired to take and appropriate all of said tract for railroad purposes; admits that on March 24, 1880, having in the meantime investigated said title, and said Averill having purchased said entire tract, 60 by 111 feet, and having heard that complainant claimed some interest in said premises, and being desirous of settling all

questions of title, it made complainant a party to said con-
demnation proceedings, and he appeared in answer to sum-
mons served upon him, and it having ascertained that the
whole of said 60 by 111 feet was not included in said petition,
by the written consent of complainant it amended its petition
by including the north $6\frac{8}{10}$ feet, lot 2, block 9, aforesaid, and
the 30 by 60 feet of lots 11 and 12, in block 2, aforesaid, and
that on April 27, 1880, complainant being in court, personally
and by attorney, a jury was impaneled to determine the value
of said entire 60 by 111 feet tract, and heard the evidence and
viewed said premises, and on April 28, 1880, returned its ver-
dict, fixing the compensation to be paid for said entire property
and the improvements thereon; that complainant assumed the
entire defence of said cause, was himself sworn as a witness,
and produced numerous witnesses as to the value, and that all
the witnesses produced by both sides testified as to the value of
the whole property, 60 by 111 feet, described in said amended
petition, together with the buildings and improvements, and
that said jury determined the value of said entire tract in said
amended petition described, and determined, as the entire value
of all the land in said petition and amendment described, as
an entire tract, and all of the improvements thereon, at the
sum of $6615; avers that the form of said verdict, signed by
said jury, was drawn by a deputy clerk of said county court,
and that in said draft it is found, among other things, "that
the petitioner take from the owners   *   *   *   the whole tract
of land described in the petition in this cause," but that in
making particular description of the premises an omission oc-
curred, so that instead of reciting the description as in said
amended petition, the same was described as lot 1, block 9,
aforesaid; avers that said omission was a mere misprision,
and was not known to defendant until long after said judg-
ment was entered, and avers that said $6615 was by said jury
determined as the value of said entire tract, 60 by 111 feet,
and not of said lot 1, block 9, as in said bill set up, and avers

that on June 26, 1880, said misprision not having become known to defendant, a judgment was entered upon said verdict, in which said omission was perpetuated, and a further misprision was made therein by omitting the name of complainant from the caption of said judgment; that complainant well knew, before the entry of judgment, that it was questionable whether said description was perfect, and craftily designing to cheat and defraud defendant, concealed and suppressed said fact and allowed judgment to be entered.

Other allegations of the answer are not deemed important to questions considered in the opinion.

The railroad company then filed a cross-bill, in which, after reciting the indebtedness of Slee to the insurance company, and the execution of the trust deeds, etc., it is alleged that some time in 1877, Slee, being then in default on the debt, taxes and insurance, put the insurance company in full possession and control of said entire tract of land on Third avenue, with all the dwellings, fences and out-houses, and that said company had, from that time until the delivery to your orator, absolute possession of said premises, and collected the rents thereon; and that about January 23, 1879, Slee being largely indebted to the insurance company, said Boone, trustee, advertised said land for sale to pay said debt, and described the same in said advertisement as a piece of ground fronting 60 feet on Third avenue, by 111 feet deep, and on February 19, 1879, said Boone, under the powers in said deed contained, sold said premises, with other property, to the insurance company for $5100, and executed a deed therefor, describing the same as lot 1, aforesaid, and said parts of lots 11 and 12, and as being a piece of ground 60 feet front on Third avenue, by 111 feet deep; that about March 24, 1880, the insurance company, in consideration of $4680 to it paid, by deed dated February 18, 1880, conveyed to Averill said tract of land 60 feet on Third avenue, and that Averill held the title for your orator, and afterwards conveyed lot 1, block 9, aforesaid, to

Anthony J. Thomas, who held the same as trustee of your orator, and on . . . . . . . . . . . . . conveyed the same to your orator; and that the said Averill, on January 17, 1881, conveyed to your orator said north $6\frac{2}{3}$ feet of lot 2, aforesaid, and said portions of lots 11 and 12; that at the time of the delivery of the deed from the insurance company, by its separate covenant, dated March 24, 1880, it agreed with Averill that in the event of a redemption by Slee of said property, Averill should have from the redemption money $4680, with six per cent interest thereon, and, also, whatever should be decreed by the court on account of taxes, assessments or other outlays made by Averill upon said property, and afterwards Averill transferred said covenant to Thomas, and that said Averill and said Thomas held the same in trust for the holder of the title of said property; that on July 22, 1879, said insurance company, having discovered the defect in the description of said property, arising from the fact that it required the north $6\frac{2}{3}$ feet of lot 2, aforesaid, to complete the 60 feet front on Third avenue, and having an unsatisfied debt due from Slee, caused judgment to be entered against him in the Superior Court for $229, and said $6\frac{2}{3}$ foot strip to be levied upon and sold upon execution on October 13, 1879, and purchased the same for $252.60, and received a certificate of sale thereof, and on March 24, 1880, by indorsement dated February 18, 1880, assigned said certificate to Averill, and on January 14, 1881, the sheriff made a deed to said Averill of said strip of land; that prior to January 29, 1880, your orator, and its officers, agents and servants, had no knowledge that said property had been sold under said execution, or any knowledge concerning the title or ownership of said property, or of any claim of Slee thereon, and that it knew nothing of said property, save that it was claimed by said insurance company and in its possession; that on said date it directed its attorney to commence condemnation suit therefor, believing that it was all included in and a part of lot 1, aforesaid, and on said date

filed its petition in the county court, making the insurance company, the city of Chicago and the county of Cook defendants thereto, and alleging that the insurance company was the owner thereof, and that it believed that said company was the owner thereof in fee simple, and that it knew said company was in possession thereof by its tenants, and had never heard that Slee claimed any interest therein, and that it intended to describe said entire tract of 60 feet front; that after the filing of said petition it directed Averill to buy said land, and Averill then entered into negotiations with said company to purchase the same, and that Averill was then informed of said omission in said trust deed, and that said insurance company had obtained judgment against Slee, had sold under execution said $6\frac{2}{3}$ foot strip, and purchased the same and had a certificate of sale thereof, and that Averill then agreed with said company to purchase the entire tract for $4680 cash, and said company agreed to convey by the description in said trust deed, and to assign said certificate, so that Averill might be entitled to a sheriff's deed when the time of redemption should expire, and a deed and assignment were prepared, and forwarded to the principal office of said insurance company for execution; that before the return of said deed, your orator caused the title of said property to be examined, and then first ascertained that Slee claimed to have some right to redeem, but did not know and was not informed as to the particulars of said claim; and upon the return of the deed and assignment, your orator informed said insurance company that said Slee claimed the right of redemption, and Averill would not receive a title to said property without some covenant by which, if the title should be defeated, Averill would receive the money paid, with interest; and thereupon the agents of said company denied that Slee had any right to redeem from said sale under said trust deed, but agreed to execute, and did execute, a separate document to the effect aforesaid, and upon the receipt thereof, and the said deed and assignment, your orator paid insurance

company $4680 for said land; that your orator thereby became the holder of the title to said premises, and entitled to possession thereof, and that immediately upon said purchase said insurance company transferred its possession to your orator, and all of the tenants thereof attorned to your orator, and it had possession of all of said property; that it desired to settle all question of right of said Slee to redeem, and to determine the value thereof between it and Slee, and to that end made Slee a party to the condemnation proceedings, and, by his expressed consent, amended its petition to include therein all of said property by a full description, and Slee appeared and defended said suit; that a trial was had concerning the value of said entire property, including the improvements, and Slee offered his own testimony, and that of a large number of witnesses, concerning the value of said entire property, and the jury, after viewing the premises, returned their verdict, and fixed upon $6615 as the compensation therefor, and found that your orator was entitled to take from the owners the whole tract of land described in said petition, but by the misprision of the deputy clerk of said county court, who drew said verdict, it did not include the entire description of said property, and described the same as lot 1, in block 9, of the assessors' second division aforesaid, and thereafter, on June 26, 1880, judgment was entered on said verdict, describing said property as in said verdict, and perpetuating said omission, and there was also omitted in the title of said cause the name of said Slee; that the omission of Slee's name from the judgment did not come to its knowledge until within a few days past, and that the omission in the description of the premises in said verdict and judgment was not at the time of the entry of said judgment, or until long thereafter, known to your orator, and that on December 27, 1880, your orator deposited with the county treasurer $6615, the compensation found as the value of said property.

Then follow allegations in respect to the possession of the property by tenants, the mutual attempts of Slee and the railroad company to obtain and hold possession, etc, and the bringing of actions of trespass by Slee against the railroad company, and then it alleges: "Your orator can not safely proceed to the trial of said causes because of said defective description in said trust deed and in the other deeds by which it obtained title, and because of the defective description in said condemnation judgment, and because said Slee is not named in the caption of said judgment, and that it is inequitable and unjust that said Slee should prosecute said cases in a court of law as well as in chancery; that your orator is willing to account for all loss and damages suffered by Slee by reason of your orator having appropriated said premises for its railroad uses, or having torn down said buildings, and to allow said Slee to redeem, if he shall be entitled to such damages or shall have the right to redeem, and is willing that said sum so found as the compensation for said premises shall be applied as your Honor may direct; that said Slee is seeking, by unjust and inequitable proceedings, to take advantage of his own errors, omissions or intentional frauds in failing fully to describe said property in said trust deed, and said other omissions which ensued therefrom, and of the omissions in said condemnation proceedings, and of his fraudulent transactions in attempting to obtain possession of said premises without redeeming from said pledge thereof, and against his own agreement in respect thereto, and in seeking to take advantage of the fact that said errors and omissions are not remediable at law; that he has brought your orator into equity, and it has submitted to the equitable jurisdiction of this court, and is ready to abide the same, and that all claims of Slee can be fully determined herein, and that, asking equitable aid, Slee should be compelled to do equity, and be restrained from the use of legal remedies which would operate injuriously to your orator, and should be compelled to deter-

mine his whole case in this court, and that he should be held equitably estopped from claiming that said 6⅔ foot strip was not included in the land deeded to said Boone, possession of which was given by him to said insurance company, and from claiming that your orator had not obtained title thereto and possession thereof by said deeds; and that it should be held that said Slee, in his attempt to obtain possession without redeeming, was guilty of a breach of his contract, and of a fraudulent act, of which he ought not to be allowed to take advantage in a court of law, and that he should be held to be equitably estopped from taking advantage of said errors and omissions in said condemnation proceeding, and that it should be held, in case he be found entitled to. redeem, that he must take said condemnation money as the full value of said entire property, and that he is entitled to that alone, and that your orator had the right to take posession of said entire property, and that full compensation for the taking thereof has been made in payment of said condemnation money to the county treasurer." The prayer is, that "said Slee, said insurance company and said Averill be made defendants, etc., and required to answer, but not under oath, and that an injunction may issue, restraining said Slee from the further prosecution of the trespass suits, and that, upon a final hearing, said injunction may be made perpetual, and that said Slee may be enjoined and required to consent to the amendment of said condemnation judgment, so that the same may include all of said 60 feet frontage on Third avenue, by 111 feet deep, and that Slee may be held equitably estopped from setting up anything in connection with said property, to the derogation of your orator's rights therein," etc.

Slee's answer to the cross-bill reiterates the allegations of his original bill; charges that Averill, in purchasing, was the agent of the railroad company, and had full knowledge of his right to redeem, and of all the facts recited in the original bill, decree, etc.; admits that said railroad company commenced

a suit to condemn lot 1, block 9, on January 29, 1880, and that he has stated the facts in relation to said condemnation in his amended bill, and denies all statements not in accordance therewith; says he has always refused to ratify the sale of said lot 1, block 9, to said railroad company for $4680, and that he did not know of said sale for said sum before said condemnation proceedings; that he tried to have said insurance company defend said condemnation proceedings, and apply the judgment upon his indebtedness to it, but that it refused, and that he took upon himself the defence, which resulted in a judgment of $6615 for lot 1, block 9, aforesaid; says that lot 1, block 9, was all the property embraced in said condemnation suit; that upon the verdict the attorney for said railroad company caused judgment to be entered for $6615 for said lot 1, block 9, omitting the name of defendant in said cause, and said money was deposited with the county treasurer, upon the motion of said railroad company, in the name and title aforesaid, omitting his name; says he had nothing to do with the entry of said verdict, said motion for a new trial, and said judgment, but they were entered by the railroad company while defendant was protesting that said verdict and judgment was not the full value of the property mentioned in said verdict and judgment; says that he gave Averill notice of all his rights before he acquired title from said insurance company, and before said railroad company saw said declarations of title; says said railroad company had full knowledge of his right to redeem, and protected itself by covenants, expecting defendant would redeem, and thereby acknowledged that he had the title.

Other allegations are denied. Afterwards, on the 25th of April, 1885, the railroad company, by leave, etc., filed amendments to its answer to the original bill, in which it alleges that Slee has been guilty of great neglect and delay in claiming the right to redeem against defendant, and that he should be estopped from asserting said alleged right on account of such delay; that his claim to the money paid by the railroad com-

pany to said insurance company, in purchase of said property, is entirely inconsistent with his alleged right to redeem against defendant, and that by reason of his failure to attempt such redemption until 1884, defendant had the right to and did consider his claim of right aforesaid abandoned, and that Slee only sought to hold said insurance company liable for the money secured by it, and had elected to receive from it such sum as it might be liable for or had received; and thereupon it did not attempt to correct said proceedings, and appropriated said property for uses necessary to it, and mortgaged it and leased it to the Wabash, St. Louis and Pacific Railway Company. On the same day, Slee, by like leave of the court, filed an amendment to his answer to the cross-bill, alleging that said cross-complainant has been guilty of gross *laches* in prosecuting its claim, and that the same is sufficient to bar any relief prayed; that having neglected to correct the errors complained of, it is now estopped from maintaining said cross-bill and having the relief asked for; that the remedy of cross-complainant is at law, and that said bill is defective in not offering to set aside the condemnation judgment.

On the 11th of September, 1885, the railroad company, by leave of court, filed a supplemental answer, alleging that on February 20, 1880, defendant requested said Averill to purchase the said property, 60 feet front lot on Third avenue, describing the same; that thereupon Averill called upon the agent of said insurance company, and a negotiation took place between them, and also a negotiation between said agent and Slee, in which Slee agreed with said agent that the insurance company should sell said property to Averill for $4680, and that in that case he, Slee, would execute a quitclaim deed thereof to remove any claim or right to redeem, and that said purchase price should be credited upon his indebtedness; that, thereupon the agent of the insurance company offered Averill said property for $4680, and Averill agreed to purchase the same at that price; that the deed of the same was prepared

and sent to the insurance company for execution, and was executed and returned for delivery; that upon the return of said deed, said agent of said insurance company requested Slee to make a quitclaim deed, as he had promised, and Slee refused so to do, offering as his only reason for such refusal that he was not indebted to said company in as large an amount as claimed, and not in any manner forbidding said sale, or countermanding his authority to sell for the price offered; and thereupon the insurance company delivered said deed, and executed and delivered the covenant dated March 24, 1880, and Averill received the same and paid to said insurance company said sum of $4680; and that said sale was made and completed in accordance with the direction, desire and intention of Slee, and by his full knowledge and consent, and that thereby said Slee should be held equitably estopped from claiming any right to redeem against this defendant.

Exception was filed to this answer, on the ground that Slee's agreement or assent therein alleged was not in writing.

On the 1st of February, 1886, complainant in the original bill, by leave, etc., further amended the same, as follows: "By striking out the following words upon page ——, 'and that whatever moneys shall be or have been paid into the hands of the county treasurer, under said condemnation proceedings, should be paid to him rather than to said company, and complainant offers to do any act which the court may deem proper to entitle him to any relief prayed for.' And upon page ——, 'that the said company may be enjoined and restrained from collecting of or receiving from the treasurer of the county of Cook any money or moneys now in his hands, or may hereafter come into his hands, from the Chicago and Western Indiana Railroad Company, under the condemnation proceedings mentioned herein.' And complainant further amends his amended bill by striking out the following words upon page ——: 'And that any moneys that said Albert J. Averill or the Chicago and Western Indiana Railroad Company might have paid to

the insurance company, may be credited upon any indebtedness found due from said complainant to said insurance company at the date of such payment being made; and your complainant will further amend his amended bill, by further leave of court, by adding to the prayer thereof as follows: 'Your complainant prays for the same relief as in said original bill, and that he may be entitled to redeem, except that the condemnation judgment shall stand, and the moneys paid to the said county treasurer hereby credited as of such date to your complainant as so much money being paid for the use of your complainant to said insurance company, and that the deeds from the Union Mutual Life Insurance Company to Albert J. Averill may be set aside.'"

The cause was referred to the master in chancery to take and report the evidence and state the account, etc.

On the 22d of November, 1886, the cause was heard, and the court found the facts to be, substantially, as alleged in the original bill and the answer to the cross-bill. The decree finds that said railroad company, on April 20, 1880, at the time of its alleged purchase, had notice of the rights of complainant, and that said insurance company was mortgagee only, and had no right to convey, and that by reason of such notice said company protected itself by an agreement with said insurance company for the repayment of said $4680 in event of redemption, and that the alleged agreement between the complainant and Warfield, set up in said supplemental answer, was by parol, and the complainant having objected to the evidence to prove the same, the court finds that said alleged parol authority was and is obnoxious to the Statute of Frauds, and not binding upon complainant, and that said railroad company did not consummate said purchase by reason of said alleged parol authority; finds that said railroad company was negligent in failing to learn the contents of said condemnation verdict when the same was returned, and of the judgment rendered thereon, and that it did learn of said error

before making deposit with the county treasurer, and thereby assented to and accepted the same as the damages awarded for said lot 1, and obtained possession of the same by said writ of possession; finds that the complainant, as against said railroad company, is estopped from attacking the sale of said $6\frac{8}{12}$ feet of lot 2, and the certificate of purchase thereof, and assignment of said certificate, and the sheriff's deed, and the deed from Averill to it, by reason of his negligence in permitting said sale to be made without objection, and said assignment without notice that said judgment was fraudulently obtained, and charges the insurance company with the amount bid therefor at the sheriff's sale; finds that the deed of said insurance company to Averill, and his deed to said railroad company, of lot 1, and of the 30 by 60 feet of lots 11 and 12, should be set aside and vacated, and that the complainant, at the time of filing his bill and amended bill, had a right of redemption in the same, but that by reason of said condemnation judgment, and the payment of said $6615 to the county treasurer, the rights of complainant in said lot 1 were transferred to said fund of $6615, and that he should have the same, less such indebtedness as was then due to said insurance company, and that the master has properly charged it with the amount due from complainant when or at the time said sum was deposited, and that it was then its duty to take enough thereof to satisfy the indebtedness of complainant to it, and that the complainant is entitled to the residue thereof, to-wit, to $531, and finds that complainant is entitled to have a reconveyance of said 30 by 60 feet, with other property, free of any incumbrance, and to take possession of the same; and it is then decreed in accordance with these findings.

The Union Mutual Life Insurance Company and the Chicago and Western Indiana Railroad Company bring the record to this court by appeal, and assign numerous errors, bringing before the court the questions considered in the opinion.

Messrs. Swett, Grosscup & Swett, for the appellant the insurance company:

The sale of the premises by the insurance company to Averill, on behalf of the railroad company, was assented to by the complainant, wherefore he is estopped from charging the insurance company other than the $4680, as of the date it was paid.

The ground taken by complainant in his original and first amended bill, that the insurance company ought not to have possession of the fund in the hands of the county treasurer, debars his present claim that it should be credited as of December 26, 1880.

When a court of equity obtains jurisdiction, it will do complete justice between the parties under the contract, and adjust all questions arising under it. *Apperson* v. *Gogin,* 3 Bradw. 48; *Nelson* v. *Dunn,* 15 Ala. 501; Pomeroy's Eq. sec. 179.

Mr. Charles M. Osborn, and Samuel A. Lynde, for the appellant the railroad company:

A deed from one having absolute title which he holds as a mortgagee, conveys to the purchaser, with notice, the mortgage debt. Jones on Mortgages, sec. 808; *Brown* v. *Gaffney,* 28 Ill. 149; *Reigard* v. *McNeil,* 38 id. 400; *Armory* v. *Lawrence,* 3 Cliff. C. C. 533; *Halsey* v. *Martin,* 28 Cal. 645; *Lawrence* v. *Dubois,* 16 W. Va. 466; *Lehigh* v. *White,* 8 Nev. 147.

In Jones on Mortgages, sec. 808, it is said: "A deed of release or quitclaim, or other conveyance, is sufficient to pass the interest of the mortgagee, when there is no separate obligation for the payment of the debt." *Dorkray* v. *Nahl,* 8 Me. 278; *Hill* v. *More,* 40 id. 524; Hilliard on Mortgages, chap. 18, sec. 7.

In this case, the evidences of the indebtedness were cancelled, and there was no separate obligation for the payment of the debt.

The insurance company's deed must be construed with its agreement, and in effect is a warranty to the extent of the purchase price, or, in case of redemption, an assignment of that portion of the redemption money. The evident intention is to assign an interest in the mortgage debt to that extent, if it should be decreed that there was a mortgage debt. The warranty (from the mortgagee) would also operate as an equitable assignment of a separate debt. Jones on Mortgages, secs. 805, 808; *Welsh* v. *Phillips*, 54 Ala. 309; *Hunt* v. *Hunt*, 14 Pick. 374; *Johnson* v. *Leonards*, 68 Me. 239; *Ruggles* v. *Barton*, 13 Gray, 506; *Jackson* v. *Brown*, 7 Cow. 13; *Robinson* v. *Ryan*, 25 N. Y. 320; *Lawrence* v. *Stratton*, 6 Cush. 163.

The insurance company was in possession, with absolute legal title. In such case its conveyance of the property, or of portions thereof, would work an equitable assignment *pro tanto* of the mortgage debt. *Olmstead* v. *Elder*, 2 Sandf. 325; *Hill* v. *Edwards*, 11 Minn. 29; *Lamprey* v. *Nudd*, 29 N. H. 299; *McSorley* v. *Larissa*, 100 Mass. 270; *Wyman* v. *Harper*, 2 Gray, 141; *Johnson* v. *Lewis*, 13 Minn. 364; Jones on Mortgages, secs. 808, 811.

The condemnation proceeding in fact covered this entire property, and the money awarded was for the whole of it. If appellee takes it, he should give up his claim to all the property.

As to the power of a court of equity to correct clerical mistakes in judgments, see Story's Eq. Jur. sec. 166; Pomeroy's Eq. sec. 871; *Chapman* v. *Hurd*, 67 Ill. 235; *Robbins* v. *Swain*, 68 id. 198; *Coughran* v. *Gutcheus*, 18 id. 390.

A court of equity will not only take jurisdiction to correct mistakes in judgments and records, but it will enforce the rights of parties as they should be if the mistakes had not been made. *De Riemer* v. *De Cantillon*, 4 Johns. Ch. 85; *Loss* v. *Abry*, 22 N. J. Eq. 52; *Waldron* v. *Letson*, 15 id. 126; *Quivey* v. *Baker*, 37 Cal. 465; *Wardlaw* v. *Wardlaw*, 50 Ga. 544; *Gump's Appeal*, 65 Pa. St. 478.

If Slee was entitled, as against the railroad company, to any portion of this property, the court should have required its condemnation in this cause, and should have directed proper issues to be framed to submit the question of compensation therefor to a jury impaneled in this cause, and thus put an end to the entire controversy. *Henderson* v. *Railroad Co.* 78 N. Y. 423.

The railroad company was interested in taking the account, and had the right to be heard.

Mr. Frank A. Johnson, and Mr. Consider H. Willett, for the appellee:

The deed from the insurance company to Averill was inoperative and void. A mortgage without the debt is not the subject of transfer. *Johnson* v. *Lewis*, 13 Minn. 364; *Hill* v. *Edwards*, 11 id. 22.

The mortgage debt is the principal thing, and the mortgage is only an incident. The assignment of the note secured passes the security. *Vansant* v. *Allmon*, 23 Ill. 33; *Towner* v. *McClelland*, 110 id. 542; *Olds* v. *Cummings*, 31 id. 188; Jones on Mortgages, sec. 808.

A quitclaim deed of mortgaged premises, executed by the owner and holder of a note and mortgage, does not operate as an assignment of the note and mortgage. *Johnson* v. *Lewis*, 13 Minn. 364; *Gale* v. *Batlin*, 12 id. 287; *Hill* v. *Edwards*, 11 id. 22.

A conveyance of the mortgagee's interest in the land without an assignment of the debt is a nullity. *Delano* v. *Bennett*, 90 Ill. 533; *Jackson* v. *Curtis*, 19 Johns. 325; *Bell* v. *Moore*, 6 N. H. 205; *Furbush* v. *Goodwin*, 25 id. 425; *Ayman* v. *Bell*, 5 Johns. Ch. 570; *Ellison* v. *Daniels*, 11 N. H. 274; *King* v. *St. Michaels*, Doug. 630; *Swan* v. *Yaple*, 35 Iowa, 248; *Peters* v. *Bridge Co.* 5 Cal. 248.

An equity of redemption is an interest in land, which can be conveyed only in writing. Wood on Statute of Frauds, sec.

227; *Hughes* v. *Moore,* 7 Cranch, 191; *Marble* v. *Marble,* 5 N. H. 374; *Van Kewen* v. *McLaughlin,* 19 N. J. Eq. 187; *Rawden* v. *Hodge,* 40 Mich. 697.

The railroad company is estopped from setting up any claim under the deed by going to trial, and taking judgment under the condemnation proceeding, after Slee was made a party, without disclosing its interest under the deed. *South Park Commissioners* v. *Todd,* 112 Ill. 379; *Railroad Co.* v. *Laurie,* 63 id. 264; *Town* v. *Town of Blackberry,* 29 id. 137; *Kile* v. *Yellowhead Township,* 80 id. 208; *Burns* v. *Railroad Co.* 9 Wis. 450.

The railroad company can not now set up an error in the condemnation proceeding against the appellee.

The circuit court has no power to correct the alleged errors in the county court, thereby enlarging the verdict or award, and the judgment thereon. *Sproehnle* v. *Dietrich,* 110 Ill. 205; Story's Eq. Jur. sec. 142-151.

The verdict of a jury is a judicial act, which can not be amended in substance except by the jury making it. *Rich* v. *Chicago,* 59 Ill. 293.

The trial court can not correct a verdict after discharge of the jury. *Wilcoxon* v. *Roby,* 3 Gilm. 475; *Hinckley* v. *West,* 4 id. 138; *Frazier* v. *Laughlin,* 1 id. 359; *Austin* v. *People,* 11 Ill. 452; *Pulliam* v. *Pencenneau,* 23 id. 93; *Odell* v. *Hole,* 25 id. 208; *Stose* v. *People,* 25 id. 602.

After a verdict is received, and the jury discharged, the control of the jury over the case is at an end, and they can not be recalled to alter or amend the verdict. *Rigg* v. *Cook,* 4 Gilm. 352; *Sargent* v. *State,* 11 Ohio, 472; *Nomaque* v. *People,* Beecher's Breese, 150; *Johnson* v. *Howe,* 2 Gilm. 345; *Martin* v. *Morelock,* 32 Ill. 485.

When a statute gives a new power or right, and provides a means of executing, that mode is exclusive. *Smith* v. *Lockwood,* 13 Barb. 209; *Bassett* v. *Carlton,* 32 Me. 553; *Rennick* v. *Morris,* 7 Hill, 575.

"If the enforcing tribunal is specified, the designation forms a part of the remedy, and all others are excluded." Ibid., and *Miller* v. *Taylor,* 4 Burr. 2322; *Smith* v. *Lockwood,* 13 Barb. 209.

The statutory remedy in condemnation proceedings is exclusive. *Kimble* v. *Canal Co.* 1 Ind. 285; *Conwell* v. *Canal Co.* 2 id. 588; *Railroad Co.* v. *Smith,* 6 id. 249; *McCormick* v. *Railroad Co.* 9 id. 283; *Railroad Co.* v. *Connelly,* 20 id. 9; *Conkling* v. *Baldwin,* 4 Wend. 667; *Stowell* v. *Flagg,* 11 Mass. 364; *Stevens* v. *Canal Co.* 12 id. 466; *Callender* v. *Marsh,* 1 Pick. 430; *Jackson* v. *Winne,* 4 Settles, 327; secs. 19, 81, and secs. 64, 72, and notes; 1 Redfield on Law of Railway, 334, and note 1; note, 1 Am. Ry. Cases, 156-171; Dillon on Mun. Corp. secs. 369, 476, 477, 478, 482; chap. 22, sec. 727; *People* v. *McRoberts,* 62 Ill. 38; *Kine* v. *Defenbaugh,* 64 id. 291.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

We think that the evidence in the present record, in respect of Slee's right to redeem from the insurance company, is not so materially different from that in the record when the case was here before, (*Union Mutual Life Ins. Co.* v. *Slee,* 110 Ill. 35,) as to call for a different conclusion from that then reached, and there is, in our opinion, too little ground for controversy in this respect to require a recitation or discussion of the evidence.

The question then occurs, is Slee barred of this right by the conveyances by the insurance company to Averill, by Averill to Thomas, and by Thomas to the railroad company? It is not claimed that Slee has, since the trustee's sale, conveyed his equity of redemption, but it is claimed that Averill is a purchaser in good faith, without notice of Slee's equity.

The deed of the insurance company to Averill was acknowledged on the 20th of April, 1880, but previously, on the 4th of June, 1879, Slee had executed, acknowledged and placed on record a deed declaring that the title of the insurance com-

pany to this property was in trust for himself. Averill was, in fact, as was also Thomas, an agent for the railroad company, and he negotiated with Warfield, an agent of the insurance company, for the purchase of the property. Slee testified that he notified Averill several times before the negotiations were concluded, that the property belonged to Slee, and that he was the proper party with whom to negotiate. Other evidence shows that Slee's declaration of trust was brought to the attention of Averill, and other agents of the railroad company interested, before the negotiations were concluded, and we think the fact fully established by the evidence that the purchase was made by the railroad company, and that the deed of the insurance company was executed and accepted, with full knowledge in the railroad company that Slee claimed the right to redeem, and that the interest of the insurance company in the property was only that of mortgagee.

But it is contended on behalf of the railroad company, first, that the insurance company, in negotiating this sale and in conveying the property to Averill, acted under authority from Slee, and with his consent,—that the price at which the property was sold was fixed by Slee, and the sale was made to reduce his indebtedness to the insurance company, and that Slee is therefore estopped to claim a right to redeem; second, that by the proceedings in the original cause Slee has affirmed the sale to the railroad company, and its title under the conveyance; and third, the agreement between Slee and the insurance company was not a mortgage, but an agreement to reconvey. In our opinion neither of these positions is tenable.

*First*—Counsel for Slee deny, in the first place, that Slee, in fact, ever promised that he would convey to Averill, or that he authorized or consented to the sale to him, and Slee himself so testified. But Warfield and Gallery testify that he gave his consent that the property might be sold if it could be sold for the price which Averill paid for it, and it is perhaps proper to say that the preponderance is that way. Assuming

that view to be maintained, counsel for Slee then insist upon the Statute of Frauds, as they did in the court below, as being a complete defence to this contention of the railroad company,—Slee having given no authority nor made any promise in writing in regard to the sale or conveyance of the property. Counsel for the railroad company, however, reply to this, that Slee is equitably estopped to deny the sale, and this, therefore, is the only inquiry to which our attention need be directed on this point.

The rule quoted by counsel from *Smith* v. *Newton,* 38 Ill. 235, and *International Bank* v. *Bowen,* 80 id. 545, we accept as sufficiently accurate for the present question. It is: "Whenever an act is done or a statement made by a party which can not be contradicted or contravened without fraud on his part and injury to others whose conduct has been influenced by the act or admission, the character of an estoppel will attach to what would otherwise be mere matter of evidence." This, it will be observed, requires that the act done or statement made shall have induced action which would not otherwise have been taken, and that the party so acting shall be injured by a repudiation of the act done or statement made. The evidence here, in our opinion, does not bring this case within these requirements.

It has been seen that the negotiations on the part of the insurance company were conducted by Warfield. He testified that Averill made application to him to buy the property, and inquired the price; that witness replied that the price was $3500; that Averill then said he would give $300 for the refusal of that price for a stated time; that Warfield communicated this offer to Slee, and Slee was not satisfied with the price; that Slee then said, if Warfield could get a sufficient amount for the property to reduce his indebtedness to the insurance company to $3000, he would approve the sale and give a quitclaim deed. As the insurance company figured up the indebtedness of Slee at $7680, this would require the prop-

erty to be sold for $4680. Warfield then notified Averill that he could have the property for $4680, and, with the insurance company's deed, a quitclaim also from Slee. Averill accepted the offer. The insurance company executed a quitclaim to Averill, but Slee refused to do so. Then, before any deed was delivered or payment made, an agreement in writing was entered into, which is hereafter set out. Warfield, among other things, said: "The contract was executed at the suggestion of Averill, as we did not have a quitclaim from Mr. Slee." And Crawford, agent for the railroad company, testified, speaking of Slee's claim to the property and his refusal to quitclaim: "I thought, from the statement and the looks of it, that the insurance company's title was good, but took this precaution of the agreement in case anything should develop in any litigation that might come up as between them," (*i. e.*, the insurance company and Slee,) "and at the time decided to go on with the condemnation proceeding." And again he said: "When this contract was executed by the insurance company I authorized the sale, and it was closed by the delivery of the papers to Averill, and his payment of the money." The agreement reads as follows:

"Memorandum of Agreement

*Made this 24th day of March, A. D. 1880, between the Union Mutual Life Insurance Company and Albert J. Averill:*

"Witnesseth, that whereas, the said Averill has purchased from the said company, for the sum of $4680, the following described real estate, situate in the city of Chicago, county of Cook, and State of Illinois, to-wit: Lot number one (1), in block number nine (9), assessor's second division of the east fraction of the north-east quarter of section twenty-one (21), township thirty-nine (39) north, range fourteen (14), east of the third principal meridian; also so much of lots eleven (11) and twelve (12), in block two (2), in Wilder's north addition to Chicago, described as follows, to-wit: beginning at the north-

west corner of said lot one (1), and running thence west to the center line of the alley between Third and Fourth avenues, thirty feet, more or less; thence south on an extension of said center line, sixty feet; thence east parallel with the north line of lot hereby described, to the west line of lot two (2) in said block nine of said assessor's division; thence north on the west line of said lots one (1) and two (2), in said block nine (9), sixty feet, to the place of beginning,—the title to which land was acquired by the said company by virtue of a sale made under and by virtue of the power of sale contained in a certain trust deed given by William J. Slee and wife to Levi D. Boone, dated June 4, A. D. 1870, and recorded in the recorder's office for said county of Cook, in book 566 of deeds, page 118, and in book 851 of records, page 317. And whereas, the said William J. Slee has placed on record in said recorder's office a notice to the effect that he claims the right to redeem said property from said sale, the validity of which claim the said company denies:

"Now, therefore, it is agreed that in the event of redemption made by said Slee, his heirs, executors, administrators or assigns, of the property described in said trust deed, the said Averill, his heirs or assigns, shall be entitled to have and receive out of the redemption money paid by said Slee, his heirs, executors, administrators or assigns, the said sum of $4680, with interest thereon from the day of the date hereof, at the rate of six per centum per annum, and also whatever money shall, in the event of such redemption, be decreed by the court to be paid by the said Slee, his heirs, executors, administrators or assigns, for or on account of any taxes, assessments or other outlays made by the said Averill upon the property so as aforesaid purchased by him.

"In witness whereof, the said Union Mutual Life Insurance Company hath caused this agreement to be subscribed by John E. DeWitt, its president, the day and year first above written.

Union Mutual Life Insurance Company.

By John E. DeWitt, *President.*"

After this instrument was executed, and probably on the 20th of April, 1880, it and the deed of the insurance company were delivered to Averill, and Averill on that date, but not until then, paid to the insurance company $4680. It is thus certain that any promise of Slee to make a quitclaim was abandoned, and that the deed of the insurance company was delivered, and the money paid by Averill, on the faith of this agreement, and it is, moreover, therefore impossible that either the insurance company or the railroad company can have been injured by Slee's failure to quitclaim, further than the inappreciable value of the loss of time of their agents in negotiating for this quitclaim.

*Second*—We do not think, in view of the fact that Slee has always denied the authority of the insurance company to sell and convey this property, or any interest in it, that any acquiescence in the sale can be inferred, because, in the original bill, he omitted to make the railroad company a party. If he had been right in his view, the deed of the insurance company, having been executed with notice of his ownership of the title, would have conveyed nothing to the railroad company, and he would hence have been under no necessity to have noticed the transaction between these companies. It may be conceded that Slee was mistaken as to the law applicable to his case; but since it is evident that his omission to make the railroad company a party was because of that mistake, and not because he, in fact, admitted its title, it can be of no importance here. The averment in the amendment is, that the railroad company made an agreement with the insurance company "to purchase *its interest*" (not the title,) in the property described in the trust deeds, etc.; and the prayer is, "that it may be decreed that the title to any land mentioned in this amendment, or in the original bill, which may have been conveyed by said insurance company to Averill, and by him to said railroad company, or by said insurance company to said railroad company directly, was conveyed with notice of and subject to all

the rights and equities of complainant as stated in such bills,"
etc. If this is, even by implication, an acquiescence by Slee
in the sale, we are unable to comprehend the import of the
language employed. That Slee intended to assert his title as
paramount to that conveyed by the insurance company, would
seem to be as plain as language can make it.

*Third*—The testimony of Judge Tuley settles, beyond ques-
tion, that the insurance company and Slee intended to occupy
towards each other, with reference to this property, the rela-
tions of mortgagor and mortgagee, and not those of vendor
and vendee. He said: "The property was to be sold under
the trust deed, bid in by the insurance company, and new
papers were to be made by which the loan would be extended.
The insurance company was to make a deed to Slee and take
a mortgage back." There is nothing in the record showing
another and different agreement between the parties.

This brings us to the question whether Slee, by accepting
or availing of the condemnation money in the hands of the
county treasurer, is bound to accept it as a payment in full
for the condemnation of all the property taken by the railroad
company, and as barring any further claim on his part to that
property. In our opinion, it must be answered in the nega-
tive. It is in proof that the evidence given in the condemna-
tion proceeding related to the entire property, and that the
amount assessed by the jury was intended to be the compen-
sation for the entire property taken and damaged, though, by
mistake, the property described in the verdict is only lot 1, in
block 9, etc., and that judgment was rendered upon the ver-
dict without discovering the mistake; and it is contended that
the maxim, that "he who seeks equity must do equity," is ap-
plicable, and, inasmuch as Slee accepts compensation for the
whole, he must consent that the whole is condemned. A little
farther examination into the facts affecting the situation of the
parties will disclose that this, though at first view plausible,
is not sound.

This is not a case where Slee has an election to take the land or the money, as it would have been had the verdict and judgment been defective and insufficient as to all and every part of the property sought to be condemned. Had the evidence shown a sum certain as compensation for the taking of the entire property, but that the verdict and judgment were defective and insufficient to vest any right in any part of the property in the petitioner, and Slee been seeking to recover that sum, then he would have been bound to consent that the railroad company should take the entire property. He would not have been concluded by the judgment, and he might have retained the property, but he could not have taken the money and property both,—treated the property both as condemned and not condemned, at the same time. Taking the condemnation money would have estopped him to deny the condemnation. *Town* v. *Town of Blackberry,* 29 Ill. 137; *Kile* v. *Town of Yellowhead,* 80 id. 208.

The judgment here is conclusive against Slee as to the property described in the verdict and judgment, and it is therefore impossible that he can make an election to retain it or accept the compensation for its taking. He can only accept the compensation. And since there is no apportionment of any part of the compensation assessed, to the property not described in the verdict and judgment, it is impossible to say that by seeking or accepting the compensation assessed, Slee has elected to treat that property as condemned also.

It is conceded that this verdict and judgment can not now be amended in this proceeding. It is to be kept in mind that the proceeding is *in invitum,*—that the defendant therein is consenting to nothing, and that upon the party seeking to divest his title is the burden of showing a verdict and judgment having that effect. This is elementary, and too familiar to need the citation of authority in its support. The railroad company is alone responsible for any mistakes that occurred in this proceeding. It should have taken steps in the county

court to have corrected the judgment. It was not bound to take the property after condemnation. If it deemed the compensation assessed was too high, it was within its discretion to decline paying, or depositing the amount assessed as compensation, and to abandon the condemnation. *Chicago* v. *Barbian,* 80 Ill. 482; *City of Bloomington* v. *Miller,* 84 id. 621.

But the evidence shows that the compensation here assessed was deposited with the county treasurer, by the proper agent of the railroad company, after it was known what property was described in the verdict and judgment, and that this compensation was assessed for the taking of that property only. Andrew Crawford, the agent of the railroad company having in charge the procuring of the right of way, depot grounds, etc., testified: "I was aware that the record of the judgment in the condemnation suit showed only lot 1, before I paid the money to the treasurer and took out a writ of possession. The reasons that induced me to do so were that it was necessary for the company to obtain possession of the property, and after fully considering it myself, and consulting our attorney, it was thought best and safe to make the deposit." This should estop the company from saying that the compensation deposited was for other than the property described in the verdict and judgment. Moreover, the constitution guarantees "that private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law." (Sec. 13, art. 2.) No jury has ascertained, here, the "just compensation" for taking the property not described in the verdict and judgment; and to take that property from Slee because he elects to take a sum assessed, on evidence given with reference to the property described in the verdict and judgment, and that not described in them, in gross, would plainly be in violation of this clause of the constitution, for, there being no apportionment of the compensation in respect of the different pieces of property,

there is no opportunity of an election to take equivalents, and Slee would be compelled either to reject all compensation for the property described in the verdict and judgment, or to abandon his ownership of his property not described in the verdict and judgment. The maxim quoted can have no application to such a case.

The question next in order is, what interest in the property passed by the deed of the insurance company? It is contended on behalf of the railroad company, that if a perfect title did not pass, at least the interest of the insurance company as mortgagee passed. This is controverted by counsel for Slee, who contend that inasmuch as there was no assignment of the debt, nothing could pass by the deed of the mortgagee.

Where the debt is evidenced by an instrument separate and distinct from the mortgage,—as, for instance, a promissory note or bond,—the rule in this State undoubtedly is, that the assignment of the debt carries the mortgage with it, and the mortgage can have no validity separate and apart from the debt, nor otherwise than as an incident to the debt. (*Olds* v. *Cummings*, 31 Ill. 188; *Delano* v. *Bennett*, 90 id. 533; *Towner et al.* v. *McClelland*, 110 id. 542.) But we have seen that the original trust deeds were foreclosed by sale, and a trustee's deed was executed, which, upon its face, assumed to vest an absolute title in the insurance company, but which, by reason of the agreement made at the time of its execution, between Slee and the insurance company, was, in fact, but a mortgage to secure whatever indebtedness was then due from Slee to the insurance company. No account was had between Slee and the insurance company to ascertain the amount then due, and no instrument in writing was executed expressing the amount of that indebtedness. The absolute deed was a mortgage because of the agreement, and the amount it secured was whatever balance should be due from Slee to the insurance company upon an accounting. When, therefore, the insurance company assumed to convey a fee to Averill, it only conveyed its interest

as mortgagee, because Averill was charged with notice that it had no other interest to convey. The deed operated as an equitable assignment of the mortgage, and thereafter Averill, and the railroad company, for whom he purchased, held as mortgagee, just as the insurance company had done before its conveyance. 1 Jones on Mortgages, (2d ed.) sec. 808, and authorities cited in notes 4 and 5.

It must then be quite clear that the railroad company was an indispensable party to the accounting before the master in chancery, for upon that accounting depended what it should receive upon redemption. The rule is, that upon the hearing before the master in chancery, "the parties have the same right to be heard, by themselves or by counsel, to introduce evidence, cross-examine witnesses, and to take the various steps authorized by law, as if the hearing was before the chancellor instead of the master." *Whiteside* v. *Pulliam*, 25 Ill. 285. To like effect, see, also, *McClay, Admr. et al.* v. *Norris*, 4 Gilm. 370.

The record shows that the railroad company objected, on the hearing before the master in chancery, to the reading of the evidence of certain witnesses produced by Slee, and that, to remove all grounds for objections, Slee produced some and offered to produce all of said witnesses, to enable the railroad company to cross-examine them. This was after the witnesses had all been examined. The master in chancery thereupon overruled the objection. The same objection, supported by affidavits that the witnesses had been examined in the absence of the railroad company, and without notice to it, was renewed in the circuit court, and Slee there again offered to produce the witnesses for cross-examination by the railroad company, but no witnesses were actually produced by Slee for that purpose. The court took the motion under advisement until the hearing, and then overruled it. We think there was error in this ruling. The party is entitled to be present and listen to the testimony of the witness as it is detailed by him in chief, and to then, or as soon thereafter as convenience will admit,

cross-examine him; and it does not cure the error of denying this opportunity, to allow him, at some subsequent day, to have the witness brought before the master in chancery for his cross-examination. It is important that a party shall be allowed an opportunity to confront witnesses who may testify against him, while giving their hostile evidence.

It is contended that the court below erred in crediting Slee's indebtedness with the amount of the condemnation money as of the date it was paid into the hands of the county treasurer, December 27, 1880. We do not think the objection is tenable. It is true that Slee, in his original bill, filed before the condemnation money was paid into the county treasury,—that is, on the 13th of October, A. D. 1880,—prayed that the insurance company might be enjoined from collecting the condemnation money from the county treasury. But the insurance company answered this bill before the condemnation money was paid to the county treasurer, (on the 16th day of November, A. D. 1880,) denying that it had any interest in the condemnation money, and alleging that it belonged to A. J. Averill, to whom it had conveyed, etc., and who, as we have before seen, in fact held for the railroad company; and this, in our view, as we have heretofore shown, was true. Averill,—or rather, the railroad company,—as assignee, stood, as respects the land conveyed by the insurance company, in its place. The condemnation money took the place of the land, and the mortgagee,—and, by consequence, its assignee,—was entitled to be satisfied out of it before Slee was entitled to any part of it. Jones on Mortgages, sec. 708; *Chicago, Burlington and Quincy Railroad Co. v. Chamberlain,* 84 Ill. 333.

There is nothing in the record to show that Slee did anything to prevent the railroad company from having the money paid pursuant to the judgment of condemnation, or to prevent its retaining the money on account. No order of court was made, or asked, to that effect, and Slee did not himself take or offer to take the money from the treasurer. The statute

provides, (sec. 14, p. 477, Rev. Stat. 1874,): "Payment of compensation adjudged may, in all cases, be made to the county treasurer, who shall, on demand, pay the same to the party thereto entitled, taking receipt therefor, or payment may be made to the party entitled." There was, therefore, in truth, no necessity for the railroad company paying the money, to the extent of the balance due from Slee, into the hands of the treasurer. Being entitled to retain it as assignee, it would have been sufficient for the railroad company to have set up that fact in its answer, and proved it on the trial. Certainly it is not Slee's fault that it has been deprived of the use of this money.

It is insisted we should, in this opinion, settle the equities between the insurance company and the railroad company. To do this any farther than we have already done, would be to go entirely outside of the record, for no relief is asked by one of these companies as against the other, in any pleading before us.

It is further objected against the decree below, that it should have required a condemnation of the property included in the petition for condemnation, but omitted from the verdict and judgment. Proceedings to condemn property, under the Eminent Domain act, are legal,—not equitable. Either party is entitled to have a jury, and the introduction of evidence and mode of conducting the trial after the jury is impaneled, is according to the rules and practice in trials at law. We think it would be inconvenient, and subserve no useful purpose, for a court of equity to take charge of such a trial. It would have to remit it to a court of law, and could only receive and act upon the judgment of that court after judgment rendered. We think it is best to remit the parties to the proper forum in the first instance.

The remaining contention of appellant, deemed necessary to notice, is, that the court below erred in dissolving the injunction of the trespass suits brought on account of the taking of the property not condemned. We do not think that the

case, in this respect, is one calling for the interposition of a court of equity. Whatever defence the railroad company may have, is good at law.

Several cross-errors are assigned by appellee :

*First*—He contends that the court erred in not dissolving the injunction as to the property of which the railroad company is adjudged to have title. It is true, that as to that property the defence at law is complete. But how is appellee injured by this decree? We are unable to perceive. It deprives him of no right.

*Second*—He argues that if he must redeem from the railroad company, he should be allowed to redeem as to the 6⅔ feet sold on execution. The 6⅔ feet lot was not included in either of the mortgages executed by Slee to the insurance company, and it is not included in the deed, or the agreement accompanying it, executed by the insurance company to Averill. Nor is it included in Slee's declaration of title, which he caused to be recorded. Conceding that the judgment upon which it was sold was fraudulent, there is no proof that Averill knew that fact when he purchased the certificate of sale. Slee was himself present at the sheriff's sale, but made no objection, and gave no notice of his claim. He let the period of redemption go by, and made no effort either to redeem or to have the sale set aside. We think the court properly refused to disturb the title. Slee is entitled to credit, in his accounting, for the amount for which this lot was sold by the sheriff, and that he received.

The decree below is affirmed, except as to that part relating to the accounting, which, in the respect and for the reason before indicated, is reversed; and to the end that the account may be taken anew, in conformity with the views here expressed, the cause is remanded. The case is one, however, wherein, in our opinion, it is equitable that the costs in this court should be divided. The clerk will therefore tax one-half the costs in this court to appellants, and the other half to appellees.

*Decree reversed in part and in part affirmed.*