## The Union Mutual Life Insurance Company

### v.

## The Chicago and Western Indiana Railroad Company.

*Filed at Ottawa June 19, 1893.*

1. Interest—*when payable under contract.* An insurance company claiming title to a lot of ground under a sale on a deed of trust, the validity of the sale being denied by the mortgagor, sold the same to a railway company which had instituted a proceeding to condemn the same lot, making a quitclaim deed, and giving its agreement, dated March 24, 1880, that if the trustee's deed should be set aside and a redemption allowed from such sale, the insurance company should pay out of the redemption money the sum of $4680, the purchase money, with interest thereon from the date of the agreement. The compensation allowed in the condemnation proceeding was $6615, which the railway company deposited in the county treasury on December 27, 1880, where it remained until January 17, 1889, when it was distributed by agreement. On cross-bill of the railway company the court decreed that the insurance company should pay six per cent interest for $4680 from December 27, 1880, to January 17, 1889: *Held,* that the decree allowing the railway company interest was erroneous, and that after the condemnation the mortgage or deed of trust became a lien on the fund or compensation money.

2. Equitable assignment—*of mortgage or deed of trust by conveyance.* Where the holder of a voidable title acquired by a sale under a deed of trust, sold the property to a railway company, through an agent of the latter, for $4680, and obligated itself, by contract, to repay the purchase money, with six per cent interest, in case the sale under the trust deed was set aside and a redemption allowed, which was to be repaid out of the redemption money, it was *held,* that the deed to the railway company conveyed only the mortgage interest held by the grantor, and that it operated as an equitable assignment of the deed of trust, and thereafter the railway company held as mortgagee, just as its grantor had done before such conveyance.

3. Eminent domain — *effect of condemnation on mortgage.* Where property incumbered by mortgage or deed of trust is condemned for a right of way, and the money awarded for the land taken is paid into the county treasury, the lien of the mortgage will attach to the fund so paid over.

Writ of Error to the Appellate Court for the First District; —heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. Horton, Judge, presiding.

Messrs. GROSSCUP & WEAN, for the plaintiff in error.

Messrs. OSBORN & LYNDE, for the defendant in error.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

On the 20th of July, 1890, the circuit court of Cook county entered its decree in favor of defendant in error, against plaintiff in error, for the sum of $2262.92, being for accrued interest, at the rate of six per cent per annum, on $4680, from December 27, 1880, to January 17, 1889. That decree was affirmed by the Appellate Court, and hence this writ of error.

It appears that on the 24th of March, 1880, plaintiff in error held the legal title to certain real estate in the city of Chicago, which William J. Slee claimed the right to redeem. Defendant in error desiring the property for railroad purposes, through its agent, Albert J. Averill, after some previous negotiations, obtained from the company a quitclaim deed, at the same time taking from it the following agreement in writing:

"Agreement by Union Mutual Life Insurance Company with A. J. Averill, dated March 24, 1880, as follows:    *    *    *

"*Witnesseth,* that whereas, the said Averill has purchased from the said company, for the sum of $4680, the following described real estate, situate in the city of Chicago, county of Cook and State of Illinois, to-wit, (here follows a description of the property,) the title to which land was acquired by the said company by virtue of a sale made under and by virtue of the power of sale contained in a certain trust deed given by William J. Slee and wife to Levi D. Boone, dated June 4, A. D. 1870, and recorded in the recorder's office for said county of Cook in book 566 of deeds, page 118, and in book 851 of records, page 317; and whereas, the said William J. Slee has placed on record in said recorder's office to the effect that he claims the right to redeem said property from said sale, the validity of which claim the said company denies:

"Now, therefore, it is agreed that in the event of redemption made by said Slee, his heirs, executors, administrators or as-

signs, of the property described in said trust deed, the said Averill, his heirs or assigns, shall be entitled to have and receive out of the redemption money paid by said Slee, his heirs, executors, administrators or assigns, the said sum of $4680, with interest thereon from the day of the date thereof, at the rate of six per centum per annum, and also whatever money shall, in the event of such redemption, be decreed by the court to be paid by the said Slee, his heirs, executors, administrators or assigns, for or on account of any taxes, assessments or other outlays made by the said Averill upon the property so as aforesaid purchased by him.

"In witness whereof, the said Union Mutual Life Insurance Company hath caused this agreement to be subscribed by John E. DeWitt, its president, the day and year first above written.

Union Mutual Life Ins. Co.<br>By John E. DeWitt, *President.*"

In January preceding this transaction, defendant in error had begun proceedings in the county court of said Cook county to condemn the same property for right of way, to which Slee was made a party defendant. On the 26th of April, 1880, (being after the purchase from plaintiff in error,) that condemnation proceeding resulted in a judgment, the compensation being fixed at $6615, which amount defendant in error, on December 27, 1880, deposited in the county treasury and took possession of the premises. After judgment, but before the deposit of said money, on the 13th of October, 1880, Slee filed his bill to redeem, against plaintiff in error, to which he afterward made defendant in error a party, setting up the conveyance to it by plaintiff in error, and also the condemnation proceeding. That case has been before this court twice: first on appeal by plaintiff in error before defendant in error was made a party, (110 Ill. 35,) and again on appeal by both of these parties, (123 Ill. 57.) The decree of the circuit court from which the last named appeal was prosecuted finds, among other things, that Slee was entitled to redeem the premises,

"but that by reason of said condemnation judgment, and the payment of said $6615 to the county treasurer, the rights of complainant in said lot 1 were transferred to said fund of $6615, and that he should have the same, less such indebtedness as was then due to said insurance company, and that the master has properly charged it with the amount due from complainant when or at the time said sum was deposited, and that it was then its duty to take enough thereof to satisfy the indebtedness of the complainant to it, and that the complainant is entitled to the residue thereof, to-wit, to $531." The decree was in accordance with those findings. The result of the hearing in this court upon that appeal was, that the cause was remanded to the circuit court for further proceedings.

The condemnation money remained in the county treasury until the 17th day of January, 1889, when, by stipulation of parties, viz., plaintiff in error, defendant in error, and William J. Slee, it was withdrawn, and distributed as follows: To defendant in error $4872.66, being the amount of said $4680, with six per cent interest thereon from the date of its payment to plaintiff in error, to December 27, 1880, the date of the deposit in the county treasury; to plaintiff in error $1211.34, the balance found due from Slee after deducting the sum paid defendant in error, by the report of the master in chancery referred to in the decree heretofore quoted from; to William J. Slee the balance of the $6615, amounting to some $513. In the stipulation of parties for said distribution it was agreed that it was made "without prejudice to or to affect any of the questions at issue between the parties, as against each other, or in said fund, or otherwise." Prior to said distribution, on July 2, 1888, the cross-bill on which the decree now in question was rendered was filed, by which defendant in error set up the agreement signed by plaintiff in error, and its quitclaim deed, claiming that thereby the latter became and was liable to pay it six per cent interest on $4680, between the dates December 27, 1880, and January 17, 1889.

The only question we are now called upon to decide is, did the circuit court err in holding plaintiff in error liable for interest between the dates named.

There is a contention in the argument of counsel for defendant in error, that the decree should be sustained upon the ground that, pending the negotiations between the agent of the insurance company and Averill, the former represented that there was due the company $7680 from Slee, and that plaintiff in error should, in this proceeding, be held to make good that statement. No such case is attempted to be made by the bill, neither is there any theory of fact presented by the record upon which the claim could be properly predicated. The bill proceeds upon the contract of March 24, 1880, and that alone. Thus, it is alleged that if Slee was allowed to redeem the premises, "then and in that case Averill or his assigns should be entitled to have and receive, out of the redemption money paid by Slee, the said sum of $4680, with interest thereon from the date of said agreement, to-wit, the 24th day of March, 1880, at the rate of six per cent per annum; * * * that this agreement was made and executed between said Averill and the said insurance company, in writing, a copy of which is filed herewith and made a part hereof." And again: "That by the said agreement * * * the said insurance company, in substance and effect, warranted the title, which it at the same time conveyed to the said Averill for your orator, to the extent of the purchase price paid for said premises, to-wit, the sum of $4680, and interest thereon at the rate of six per cent per annum from that date, against the said claim of said Slee of a right to redeem the same; and agreed that, in case said Slee should be allowed to redeem from said sale under said trust deed, the redemption money thereof, to the extent of the sum of $4680 so paid, and interest thereon, should be paid over to your orator." The answer denies that under the agreement it can be held liable for the

interest claimed.    Our decision must therefore depend upon the construction of that agreement.

Recurring to the case reported in 123 Ill. 57, it will be found that in passing upon that part of the decree then before the court, above set forth, we said : "It is contended that the court below erred in crediting Slee's indebtedness with the amount of the condemnation money as of the date it was paid into the hands of the county treasurer, December 27, 1880.    We do not think the objection is tenable.    It is true that Slee, in his original bill, filed before the condemnation money was paid into the county treasury,—that is, on the 13th of October, A. D. 1880,—prayed that the insurance company might be enjoined from collecting the condemnation money from the county treasury.    But the insurance company answered this bill before the condemnation money was paid to the county treasurer, (on the 16th day of November, A, D. 1880,) denying that it had any interest in the condemnation money, and alleging that it belonged to A. J. Averill, to whom it had conveyed, etc., and who, as we have before seen, in fact held for the railroad company,—and this, in our view, as we have heretofore shown, was true.    Averill,—or, rather, the railroad company,—as assignee, stood, as respects the land conveyed by the insurance company, in its place.    The condemnation money took the place of the land, and the mortgage—and, by consequence, its assignee,—was entitled to be satisfied out of it before Slee was entitled to any part of it.    Jones on Mortgages, sec. 708 ; *Chicago, Burlington and Quincy Railroad Co. v. Chamberlain,* 84 Ill. 333." (123 Ill. p. 95.)

In a former paragraph of that opinion, in passing upon the question as to what interest in the property passed by the deed of the insurance company to the railroad company, we held, that "when, therefore, the insurance company assumed to convey a fee to Averill, it only conveyed its interest as mortgagee, because Averill was charged with notice that it had no other interest to convey.    The deed operated as an

equitable assignment of the mortgage, and thereafter Averill and the railroad company, for whom he purchased, held as mortgagee, just as the insurance company had done before its conveyance. 1 Jones on Mortgages, (2d ed.) sec. 808, and authorities cited in notes 4 and 5." It was this part of the opinion to which reference was made when we said in the paragraph first quoted: "And who, as we have before seen, in fact held for the railroad company,—and this, in our view, as we have heretofore shown, was true." And it was further said in that opinion: "There was, therefore, in truth, no necessity for the railroad company paying the money, to the extent of the balance due from Slee, into the hands of the treasurer. Being entitled to retain it as assignee, it would have been sufficient for the railroad company to have set up that fact in its answer, and proved it on the trial. Certainly it is not Slee's fault that it has been deprived of the use of this money." (123 Ill. p. 96.)

It thus appears that we are committed to the position that the transaction between these parties of March 24, 1880, operated as an equitable assignment of the mortgage interest of the insurance company to the railroad company, and that thereafter the latter, as to that interest, stood in the place of the former; that the condemnation money took the place of the land, and the railroad company was entitled to be satisfied out of that fund before Slee was entitled to any part of it; that there was no necessity for the railroad company's paying that money, to the extent of the amount due it as such assignee, into the county treasury, and that it was neither the fault of Slee or the insurance company that it did so. As is shown by that opinion, the insurance company had, by its answer filed before the deposit was made, denied that, as against Slee, it had any interest in that money, and alleged that it belonged to Averill, representing the railroad company.

By affirming that part of the decree of the circuit court above set forth, we then held that the master had properly

charged the condemnation money with the amount due from Slee, *as of the date of the deposit, and that it was then the duty of the railroad company to take enough of that fund to satisfy the indebtedness of Slee to it.* Nothing whatever has been shown against the construction then placed upon the contract, and the rights of the parties under it. The reasons given and authorities cited in support of the conclusion there announced abundantly sustain it. Under that decision, but for the written agreement entered into contemporaneously with the execution and delivery of the quitclaim deed, defendant in error would no doubt have been entitled to retain out of the $6615 the whole amount of redemption money due from Slee, not as interest on the money paid the insurance company, but as assignee of the mortgage interest of that company. But by the express terms of that written agreement it was to have only so much of the redemption money as would be sufficient to repay it $4680, with interest to the time of redemption. As we have seen, the redemption money was paid by Slee, and came into the hands of the railroad company December 27, 1880, the date of the deposit. From and after that date Slee owed nothing, and it held, subject to its own disposition, all the money due it from the insurance company. By the subsequent distribution it received the full sum of $4680, with six per cent per annum interest thereon from the date of its payment to the insurance company to the time it is chargeable with having obtained the redemption money, and that was all it was entitled to under the contract. Certainly it had no claim against plaintiff in error for interest after December 27, 1880. If it lost the use of money after that date it did so because it voluntarily chose to pay it into the county treasury and suffer it to remain there.

The decree of the circuit court is erroneous, and the judgment of the Appellate Court affirming the same must be reversed. The cause will be remanded to the circuit court of Cook county, with directions to dismiss the bill.     *Judgment reversed.*